## CALKINS *v.* BERTRAND and others.

*(Circuit Court, N. D. Illinois. July, 1881.)*

1. REISSUE No. 3,932—CULTIVATOR—REFERENCE TO MASTER—EXCEPTIONS TO MASTER'S REPORT—NOMINAL DAMAGES—COSTS.

   Upon a reference for the infringement of the first claim of reissued letters patent No. 3,932, granted April 26, 1870, to Julius Gerber, for improvement in cultivators, being but one element of a number composing defendant's device, and consisting in hinging the beams of the cultivator to the pole or tongue between the evener and neck-yoke, *exceptions* to master's report, finding arbitrarily, independent of any affirmative proof by the complainant, one-half the total net profit of defendant's machine to be due to such feature, *sustained*, and *nominal damages* and *costs* only awarded complainant.

2. PATENT FOR SINGLE FEATURE OF MACHINE—INFRINGEMENT—MEASURE OF DAMAGES.

   When a patent covers but one of many features of a machine, the gains on the whole machine cannot be reckoned as damages for infringement thereof, but only the gains arising from the use of the special device or element claimed by such patent.

   *Seymour* v. *McCormick*, 16 How. 490; *Philp* v. *Nock*, 17 Wall. 460; *Mowry* v. *Whitney*, 14 Wall. 620; *Cawood Patent Case*, 94 U. S. 710; *Goulds Manuf'g Co.* v. *Cowing*, 8 O. G. 278.

3. SINGLE INFRINGING ELEMENT—COMBINATION WITH INFRINGING ELEMENT—MEASURE OF DAMAGES.

   Where a machine is composed of several elements, only one of which infringes a patent, the others making the whole a complete and operative mechanism, being covered by patents in which the complainant has no interest, or are public property, the complainant cannot recover profits made by the use of such parts, even in combination with his device.

4. INFRINGEMENT—DAMAGES—PROOF—BURDEN OF PROOF.

   The complainant must show his damages by reason of the infringement by evidence. They must be proved, and not jumped at. They are not to be presumed. *Philp* v. *Nock*, 17 Wall. 460; *Blake* v. *Robertson*, 94 U. S. 733.

5. SAME—INFRINGING ELEMENT NOT INCREASING VALUE—NOMINAL DAMAGES.

   Where the defendant shows by affirmative proof that his machine derived no increased value in the market from the use of the infringing element, the complainant can only recover nominal damages.

6. SAME—SAME—AFFIRMATIVE PROOF BY DEFENDANT—ABSENCE OF PROOF BY COMPLAINANT.

   Affirmative proof by defendant that he has made no profit by the use of the infringing feature, supplemented by the lack of proof to the contrary by the complainant, make no record from which any damages or profits can be shown.

7. SAME—DAMAGES—APPORTIONMENT—BURDEN OF PROOF—EVIDENCE—TANGIBLE—SPECULATIVE.

   The burden of proof is upon the complainant to separate or apportion the defendant's profits and complainant's damages between the features infringed and not infringed, and such evidence must be reliable and tangible, not conjectural or speculative; or he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine as a marketable article is properly and legally attributable to the patented feature.

8. SAME — SAME — ABSENCE OF AFFIRMATIVE PROOF — ARBITRARY APPORTION-
   MENT.

> In the absence of affirmative proof on the part of the complainant as to the
> profits made by the defendant by the use of the infringing feature, it cannot be
> assumed that half or any other share of the profits made by defendant on his
> entire machine was due to the use of such feature.

9. SAME — NOMINAL DAMAGES — COSTS.

> Where nominal damages only are awarded the complainant for the infringe-
> ment of his patent, the assessment of costs will depend upon the special cir-
> cumstances of the case.

*Offield & Towle,* for complainant.
*West & Bond,* for defendants.

BLODGETT, D. J.   This suit was brought by complainant against
the defendants for infringement of certain letters patent issued by
the United States to Irulius R. Smith, on the twenty-fourth of April,
1860, and reissued to Julius Gerber, April 26, 1870, for "an im-
provement in cultivators."   A hearing was had upon pleadings and
proofs, and a decree entered finding that defendants infringed the
first claim of the reissued patent, which is for "an auxiliary frame
carrying two or more shovel standards on each side, as shown, when
said frame is hinged to the pole between the evener and the neck-
yoke, as described, for the purposes set forth;" and a reference
made to the master to take proofs and state an account of the gains
and profits received by defendants, and the profits of which com-
plainant had been deprived, and the damages sustained by him in
consequence of the infringement so found and adjudged.

The proof taken on the hearing on the question of infringement
showed that the complainant's patent is applicable to what is known
to the trade as a "Riding Straddle Row Cultivator;" that is, a
wheel cultivator, on which the operator rides, provided with devices
which enable, him to drive the team and manage the plows from his
seat.   The defendants' cultivator belongs to the same class, but the
devices by which the plows are manipulated, and many of the opera-
tive parts of their machine, are not common to the complainant's
machine; the only feature of complainant's patent which defend-
ants' machine was held to infringe being that of hinging the beams
to the pole or tongue between the evener and neck-yoke so as to
secure what complainant calls the "long swing" motion, peculiar to
his cultivator.   It will thus be seen that defendants were not found
to infringe complainants' entire machine, as covered by his reissued
patent, but only one element or feature of it.   Other features pecu-

liar to defendants' machine the complainant had no interest in, and, it is claimed, are covered by patents held by defendants.

Upon this reference so made to him the master reported the gross profits made by defendants on all machines made by them during the years in question at $33,354.75, from which he deducted 10 per cent. as manufacturer's profits, leaving a net profit of $30,023.75 made by defendants on the machines made by them. To this report exceptions were filed by the defendants, and the matter was referred to the master for further action, with the following directions:

"To further inquire into and report more fully what profits have been made by the defendants upon the machines manufactured by them during the years 1870 to 1874, inclusive, and also what portion of said profits reported by him as made by the defendants on their said machine is or may be due to the patented devices and improvements of the said defendants contained in said machines, and the value of the said defendants' improvements found in their said machine which ought to be deducted from the gross amount of profits found by said master."

Upon this reference the master has made a further report, in which he has found the total number of machines made by the defendants in all the years in question as follows: 1870, 543; 1871, 1,300; 1872, 937; 1873, 740; 1874, 500; total, 4,020. That the gross profits made by defendants on said machines amounted to $41,217.50, from which he has deducted for rent, interest, taxes, advertising, losses on bad debts, and wear of machinery, $9,838.42, and for clerk hire at the rate of a thousand dollars a year to each defendant for the four years, making a total of $8,000; making total of deductions $17,838.42, and leaving a net profit of $23,470.08. The master concludes, and so reports to the court, that one-half of the net profits so found should be deducted as the proportionate amount due to the patented devices and improvements of the defendants contained in said machines, leaving the sum of $11,735.54 as the amount of profits made by defendants which should be accounted for and paid to complainant for such infringement. The reason given by the master for dividing the profits equally between the complainant and defendants is that the proof furnished no reliable *data* on which to fix the amount of profits made by defendants from the use of complainant's device in their cultivators, or for showing the amount of deduction which ought to be made from the net profits of the business by the use of defendants' own patented devices, and that he, therefore, resorted to a division of the profits as the most equitable and just rule which he could adopt under the circumstances. To

this finding and report of the master defendants have filed 13 exceptions.

The first seven exceptions assert in substance that it was incumbent on complainant to show by the proof that defendants not only made profits by the use of complainant's device in their machine, but the specific amount of such profits; that complainant has not only failed to make such proof, but also that the testimony taken and reported affirmatively shows that defendants have made no profits by the use of complainant's "long swing" feature in their machines. These exceptions I shall first consider.

In a brief opinion, directing a second reference to the master, I stated that the master would be directed to hear proof "as to what this 'long swing' element in defendants' cultivator, which belongs to complainant, is worth to defendants' machine; how much it adds to the value of defendants' machine—the saleable value." I assume that this must be the basis of the inquiry. I consider the law to be well settled that when a complainant's patent covers but one of many features of a machine, the gains on the whole machine cannot be reckoned as damage, but only the gains arising from the use of the special device or element covered by the complainant's patent. If the other parts of the machine which go to make the whole a complete and operative organism manufactured by defendants are covered by patents in which complainant has no interest, or even if they are public property, the complainant cannot claim profits made by the use of such parts, even in combination with his device. For illustration, if an operative cultivator could be made without the use of any patented device, but by the use of a certain patent a better or improved cultivator can be made, the damages to the patentees for the use of a patent so used would be the increased value given the machine by the use of the patent, not the profits on the entire machine. This rule was recognized in the *Cawood Patent Case*, 94 U. S. 710, where the supreme court said:

"In settling an account between a patentee and an infringer of a patent, the question is not what profits the latter has made in his business, or from his manner of conducting it, but what advantage has he derived from his use of the patented invention."

So, also, Justice Hunt said, in *Gould Manuf'g Co.* v. *Cowing*, 8 O. G. 278:

"I understand the rule to be settled that when the patent is for an improvement upon a machine, the damages for the infringement of such patent are confined to the profits made by the use of the improvement only, and not by

the manufacture of the whole instrument. * * * What advantage did they have that they would not have had if they had built their machine without the improvement?"

To the same effect are *Seymour* v. *McCormick*, 16 How. 490; *Philp* v. *Nock*, 17 Wall. 460; *Mowry* v. *Whitney*, 14 Wall. 620. Upon the original reference the only proof offered by complainant was as to the profits realized by the defendants upon the entire machine as made by them. The proof showed that defendant's machine not only included the feature of hanging a plow-beam to the tongue between the evener and neck-yoke, but also contained, at least, 10 enumerated devices covered by a patent owned by defendants, and which, defendants contended, gave the chief practical value to their machine.

In the order of reference the master was directed to inquire and report more fully what—

" Profits have been made by defendants upon the machines manufactured by them, * * * and what portion of the profits reported by him as made by defendants on their said machine is or may be due to the patented devices of defendants contained in said machine, and the value of defendants' improvements found in their machines which ought to be deducted from the profits found by said master."

In the new proof taken before the master complainant has not attempted to show how much of the profits made by the defendants is due to the use of the patented devices of the defendants also used in the machines. The only new proof taken by complainant relates to defendants' profits on the entire machine, and not to the use of complainant's device in defendants' machine.

" The plaintiff must show his damages by evidence. They must not be left to conjecture by the jury. They must be proved and not jumped at. *Philp* v. *Nock*, 17 Wall. 460.

" Damages must be proved; they are not to be presumed." *Blake* v. *Robertson*, 94 U. S. 733.

" The patentee must in every case give evidence tending to separate or . apportion the defendants' profits and patentee's damages between the patented features and the unpatented features; and such evidence must be reliable and tangible, and not conjectural or speculative, or he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." 14 O. G. 485.

In the light of these authorities it is quite clear that the complainant has not furnished by his proof any reliable standard for computing or assessing his damages. He has not shown how much of the

defendants' profits were made by the use of his device. But the defendants, upon the rereference, have given proof showing that their machine derived no increased value in the market from the use of the complainant's "long-swing" feature. Upon the second hearing before the master the defendants produced a machine constructed with all the leading devices characteristic of the defendants' machine, except that they hinged the plow-beams at the evener instead of hinging them forward of the evener, or between the evener and the neck-yoke. It was a full-sized operative machine; was constructed and placed at work in a field in the presence of a number of intelli-gent witnesses. In the same field was also one of the defendants' machines, constructed with the "long-swing" element precisely as it was claimed to infringe the complainant's patent, where it was hinged between the evener and the neck-yoke, giving a longer plow-beam and giving a longer vibrating motion to the plows from the increased length of the beam. This machine, constructed after model No. 17, was tried in the presence of these witnesses, and among them was Mr. Jacob Beihl, who appears to have been a man-ufacturer and machinist.

After the exhibition he testified that, in his opinion, attaching the shovel frame to the tongue in front of the evener had no value in defendants' machine; that, the cultivator made like Exhibit No. 17 worked better and easier, and was better than the defendants' ma-chine like No. 5; that the machines like No. 17 would have been more saleable, and the profits thereon would have been increased rather than diminished. This witness attributes all the profits to other fea-tures than the "long swing." The testimony of Mr. Anthony Haines, a manufacturer and gentleman of great intelligence, and that of Alfred Crill, is to the same effect. This affirmative proof that defend-ants made no profits by the use of complainant's device, supple-mented to the lack of proof by complainant as to what profits were made by the use of complainant's "long swing," certainly makes no record from which it can be said any profits or damages are shown. It cannot be assumed, in the absence of proof, that half or any other share of the profits made by defendants were due to the use of com-plainant's device.

The other exceptions which were taken in the case had reference to the failure on the part of the master to make certain allowances to the defendants, but as I do not consider that they are material, in the view I take of the questions which are presented before me, I shall not review or discuss them.

The only question, then, that remains is this: the complainants, having shown no damages in the case, will be entitled to a decree only for nominal damages. And the only question is, who shall pay the cost of the reference? It was contended on the argument that, inasmuch as no damages have been shown on the part of the complainant, the costs of the reference should be assessed against the complainant. I cannot subscribe to this view of the question for this reason: This suit was commenced in 1873 or 1874, and the defendants persistently fought and resisted not only the validity of the complainant's patent, but the question of infringement. If they had said frankly, at once, as they now say at the end of the conflict, "we get no benefit and make no profit by the use of that part of our machine which infringes yours, and therefore we are willing to abandon it; we can make just as good a cultivator without using it," and had at once changed or modified the form of their cultivator in that regard, they would have stood in the light before the court of acting fairly and frankly with the complainant; but instead of that they resisted the validity of the complainant's patent, denied that they infringed, and fought him to the bitter end upon the question of infringement; and, when that question was adjudged against them, fell back upon the question of damages. It seems to me, therefore, upon the evidence, that the entire expense of the reference should be adjudged against the defendants.

The exceptions will be sustained so far as anything but nominal damages are found by the master, and a decree entered giving judgment for nominal damages and costs against the defendant.