REED and others *v.* LAWRENCE and others.[1]

SAME *v.* CHASE and others.

(*Circuit Court, W. D. Michigan, S. D.* October Term, 1886.)

1. PATENT—SUIT FOR INFRINGEMENT—ORIGINAL SUPPLEMENTARY ACCOUNT.

In a suit to recover damages for the infringement of a patent, where a supplementary account of the profits since the first accounting is ordered, the master may use on the second accounting, for all proper purposes, the record which he used on the first accounting, without its being put in evidence before him.

2 SAME—PRINCIPLE TO BE APPLIED IN ACCOUNTING FOR PROFITS.

In a suit for the infringement of a patent, the defendant is accountable only for the sum which represents that portion of the profits resulting from the employment of the patented devices in the article manufactured by the defendant. If the article made by him embodies the use of other valuable features, not patented to the complainant, but which have contributed to its marketable value, the defendant is not liable to the complainant for the use of such features; and the burden is on the complainant to show what portion of defendant's profits arose from the use of complainant's patent.

*Howard & Roos,* for complainants.

*Edwards & Stewart* and *J. R. Bennett,* for defendants.

SEVERENS, J. These cases are now brought before the court on exceptions to the master's report in the several cases made under the order embodied in the interlocutory decrees heretofore made and entered therein. They have been presented and argued together, and no reason is perceived why they are not subject to the like considerations and direction.

A brief history of the proceedings in the causes will facilitate a clear understanding of the action of the court, and the grounds and principles of its decision. The complainants are the owners of what is known as the "Garver Patent," for an invention of certain improvements in the construction of spring-tooth harrows, and as such owners filed their bills of complaint in these causes in this court against the defendants; alleging that the defendants were and had been engaged in the manufacture of spring-tooth harrows, which contained infringements on the complainants' claims under the Garver patent, and praying for an injunction, and for an accounting of the profits and damages already sustained. The defendants, answering, denied the validity of the Garver patent, and their infringement thereof, if valid. The cases were brought to hearing on pleadings and proofs before Associate Justice MATTHEWS and my predecessor, Judge WITHEY, and a decision was made affirming the validity of the patent, and the defendant's infringement thereof, and an interlocutory decree was entered in conformity therewith, which also ordered an accounting of the profits and damages, as is usual in such cases. On the representation by defendants that they would suffer irreparable damages if their business should be closed up by an injunction,

[1]See Chase v. Tuttle, 27 Fed. Rep. 110.

the court allowed a suspension of the injunction pending an appeal by the defendants on their giving bonds, which was done. The above-mentioned decree was made June 30, 1882. In pursuance of the order for an accounting, the parties went before the master, and produced their proofs, and he made a report, awarding the sum of $——. This report, so far as it is necessary to particularize, proceeded on the grounds that the defendants were liable for the whole profits derived by them from the manufacture of the harrows, and the sale thereof, and some supplementary damages to the complainants, which were found to be in all $5.42 for each harrow. Other details of his report are omitted for the sake of brevity, and because they are not essential to the main point in controversy.

Exceptions were filed to the report by the defendants. They were brought on to be heard before Judge WITHEY, and, upon argument, the principal exception, which is also the one relied on in this hearing, was overruled, and the report confirmed. It is clear that this order of confirmation adopted as its cardinal principle the rule upon which the master had proceeded, namely, that in such a case the complainant is entitled to recover from the defendant what the proofs show to have been the profits of the defendant realized by him from the manufacture, which involved the infringement of complainants' patent, as well as the sum which, added to those profits, would equal the profits complainants might have made on the same number of harrows. An opinion was prepared and filed by Judge WITHEY, which, in substance, declared that rule applicable to the cases; the learned judge taking the view, apparently, that the patent was a primary one, and that it was one which gave the whole value to the harrow, as distinguished from one which gives an increased utility to an implement or machine otherwise, in some measure, valuable for the general purpose for which it is designed. I shall, in a subsequent place, refer to that opinion more particularly.

The late Circuit Judge BAXTER having, at the defendant's instance, ordered a rehearing of the original causes on the merits, such rehearing was had before the Hon. STANLEY MATTHEWS, the associate justice of the supreme court allotted to this circuit, sitting alone. On elaborate argument, the interlocutory decree entered on the former hearing was confirmed, the order suspending the injunction was withdrawn, an accounting from the date of the termination of the first accounting up to the date of the rehearing was ordered, and a permanent injunction was directed to issue. 25 Fed. Rep. 94. The court also, in this confirmatory decree, ordered incidentally that the action already taken by the court on the master's report stand affirmed. I am advised, and it is otherwise obvious enough, that on the rehearing no question involved in the accounting was discussed or alluded to, and consequently no consideration was given to any such question, and this part of the decree, being assumed to have been already disposed of, was entered therein *sub silentio*. The court is also apprised that the defendants have appealed to the supreme court from the decree made on the rehearing on the merits.

Pursuant to the order for accounting for the damages and profits during the interval between the two hearings of the causes, the parties have been again before the master, and, upon some additional proofs, of a like character, however, to those employed on the former accounting, and the proofs then offered, as well as the original record in the case, the master, relying upon the same grounds as before, has reported in favor of the complainants, and against Chase, Taylor & Co., for the sum of $23,712.34, and against Lawrence & Chapin in the sum of $13,958.26, being for the sum of $5.42 for each harrow manufactured and sold by them, respectively. This report is excepted to on the same grounds, substantially, as before, but, as these grounds merge into one principal question, I shall notice but one other.

Some question was made at the hearing whether the original record was before the master, so that he could take cognizance of it without its being put in evidence before him, which it was claimed was not done; and it was argued by defendants' counsel that the master could not refer to or consider it in making his report. No authorities are cited on this point. I am, however, of the opinion that the master is at liberty to do this for any legitimate purpose in preparing his report, and no injurious use is shown to have been made.

The principal question recurs, which is whether the report excepted to is founded on the true doctrine in relation to the damages and profits in patent causes circumstanced as these are, or whether, on the other hand, it has adopted a principle which is inequitable and unjust. I am unable to see that the question thus presented is in any respect different from that which was presented to Judge WITHEY upon the former accounting; and it has been strongly urged by counsel for complainants that the court ought now to follow in his footsteps, and treat this matter as a thing adjudged. And I feel the force of the argument, founded on the incongruity in the action of the court, if opposite results are arrived at on these successive stages in the same proceedings. But, on the other hand, it must be remembered that the causes still remain within the control of the court; that no final decree has yet been rendered; and that there still remains opportunity to the court to set the parties right, if matters have taken a wrong direction, for I cannot but think the appeal which has been taken to the supreme court is premature, and that I must treat the cases as pending here. Profound and sincere as my respect is for the memory of Judge WITHEY, and his legal learning and good judgment, it is not consistent with my sense of duty that I should abdicate the function of exercising my independent judgment, or refuse to suitors, on the score of mere sensibility, the equitable rights to which the conscience of the court thinks them entitled. For though I am quite conscious of the fact that as the cases will undoubtedly go to the supreme court on the questions involved, and what is done at the circuit is in preparation to that end, my conviction is that I ought, so far as is in my power, to put them upon the right course, so that not only what the court thinks should be the right result here shall be attained, but the cases put in such shape that, upon appeal, the supreme court may have

all the material before it for giving such judgment as that court shall find to be just between the parties, whether it shall agree with or differ from the court below. Adding only. that no slight doubt, or even a slight inclination of judgment, would justify a change in the ruling already made upon the former accounting, I will now proceed to examine the question presented.

Whatever uncertainty or confusion there may have been arising from the varying decisions of the subordinate courts, the supreme court has now, by a settled course of decision, established the principles which should govern the court in estimating the damages and profits to be accounted for by the infringers in patent causes. The most generally applicable rule is the one which, resting on the principle of compensation for injury, which runs through all the branches of the law as administered between party and party, declares that the defendant, who is accountable for the profits arising from the infringement of the rights secured to the complainant by his patent, shall account to him for the sum which represents that portion of the profits resulting from the employment of the patented devices in the article manufactured by the defendant. If the manufactured article embodies the use of other valuable features not patented to the complainant, but which have contributed to its market value, whether such other features are patented to any other person or not, the defendant is not liable for the use of them to the complainants. If such other features are patented to some third party, that person is the one entitled to recover for that infringement, to the extent which his patented device has contributed to the defendant's profits. But if, on the other hand, those other qualities are not patented at all, then the defendant, in common with the general public, has a right to apply them to his business, and make the most he can of them. They belong to the common stock, and there is no exclusive right to them in any one. *Blake* v. *Robertson*, 94 U. S. 728; *Cawood Patent*, Id. 695; *Black* v. *Thorne*, 12 Blatchf. 20, 111 U. S. 122, 4 Sup. Ct. Rep. 326; *Black* v. *Munson*, 14 Blatchf. 265, this last case being, as I understand, a branch of the next preceding; *Elizabeth* v. *Pavement Co.*, 97 U. S. 127; *Garretson* v. *Clark*, 111 U. S. 120, 4 Sup. Ct. Rep. 291; *Dobson* v. *Hartford Carpet Co.*, 114 U. S. 439, 5 Sup. Ct. Rep. 945.

To these authorities I ought to add *Tuttle* v. *Gaylord*, 28 Fed. Rep. 97, dicided only last August by Judge COXE, in a litigation over the Garver patent, on the same or a similar state of the evidence on the accounting, in which nominal damages only were awarded.

Corollary to this rule, but manifestly no exception to it, is another one, which is that when the patented feature which has been infringed by the defendant is one which was the sole element of value in the thing manufactured, so that but for it the article would not be marketable, because not sufficiently useful for the purpose to which it was intended, the defendant is liable for the whole profits of the manufacture. *Manufacturing Co.* v. *Cowing*, 105 U. S. 203, which case is an excellent illustration of the distinction. And the distinction is again pointed out in *Dobson* v. *Hartford Carpet Co.*, 114 U. S. 445, 5 Sup. Ct. Rep. 945. This rule is

as plainly just as the other. In both the essential principle is the same, which is to award to the injured party that redress which compensates for the violation of his right. In the first case, his right does not extend to the whole manufacture; in the second, it practically does.

It is certainly alien to the principles of the court to inflict vengeance. Its aim is rather to administer justice upon strictly equitable principles. In the opinion of Judge WITHEY, and the consequent action of the court in confirming the master's report, the second rule above stated was applied, and the court held in effect, as above stated, that the Garver patent was a primary one, and he held that those features of that patent which had been sustained by the court were the sole element of value in the harrows manufactured and sold by the defendants which made them saleable, and but for which those harrows would not, nor would any appreciable portion of them, have been sold. Now, as appears by the opinion of Mr. Justice MATTHEWS, and the decree entered thereon, the Garver patent was sustained in respect to two devices, namely, the spring-tooth attached to and circling over the frame, and downward and forward to the point below the frame, and also the peculiar method of the attachment of the tooth to its seat upon the frame. This last device is not involved in the present accounting, because it is not claimed that the defendants employed it during the period over which the accounting extends. The feature, therefore, to which the present question of damages relates, is that of the spring-tooth arching over the frame, and with its point inclining forward under the frame.

The court is required to take judicial notice of what is commonly known in the various branches of manufacture and industry. It is required that the court should know what is the current progress in the arts affecting the convenience and methods in common use among the people. *Phillips* v. *Detroit*, 111 U. S. 604, 4 Sup. Ct. Rep. 580; *King* v. *Gallun*, 109 U. S. 99, 3 Sup. Ct. Rep. 85; *Terhune* v. *Phillips*, 99 U. S. 592; *Brown* v. *Piper*, 91 U. S. 37. And, because this is so, the court is bound to know what is generally known in this branch of business; that, after the valuable improvement introduced by the Garver patent in the manufacture of spring-tooth harrows, the great advantages of this class of implements were generally recognized, and the business of manufacturing harrows with spring-teeth was entered upon in various parts of the country, and by many individuals, so that the market was, and has ever since continued to be, filled with these harrows of various patterns, and all pushed upon the public with a pertinacity which has become a recognized incident of all such kinds of business. A few of them contained this feature of the Garver patent of the tooth arching over the frame, but more did not. All, however, included the feature in some form of the springing tooth, which takes the form of an arch in some portion of its conformation, and is constructed of steel to give the desired vibratory motion. And the general use of these different patterns of harrows is in promiscuous distribution throughout the country where such implements are in demand. Some have the same structure of frame as the complainants have adopted; others have applied the spring teeth to frames

of other forms. A number of patents have been obtained, other than that of Garver, applicable to different devices in the building of such harrows, some of which the defendants claim to own, and to have used in the manufacture of the harrows now to be accounted for. How can it be said, in the light of all these well-known facts, of which notice must be taken, and which are also shown in the main by the direct evidence in the cases, that the sales which have been made by the defendants, and the profits they have made, are due solely to the value contributed to the harrows by the feature of the arching tooth peculiar to the Garver patent? It seems to me that to say this is to deny the general knowledge and experience. To say that every purchaser would have bought a spring-tooth harrow having the peculiarity of the Garver patent, and would have bought no other spring harrow, is impossible, without ignoring what is constantly happening throughout the country.

In my opinion, the language of the supreme court in *Garretson* v. *Clark* and *Dobson* v. *Carpet Co.*, *mutatis mutandis*, has a clear and positive application.

In the first of these cases, the patent was for an improvement in the method of moving and securing in place the movable jaw of a mop-head. The court said that, with the exception of this mode of clamping, mop-heads like the plaintiff's had long been in use. Before the master, the plaintiff had proved the cost of his implements, and the price at which they were sold, and claimed the right to recover the difference as his damages. This rule was rejected, and, no other evidence of damages being offered, the plaintiff was allowed only nominal damages. This action of the circuit was sustained on appeal. Mr. Justice FIELD, delivering the opinion of the court, said:

"The rule on this subject is aptly stated by Mr. Justice BLATCHFORD in the court below. 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural nor speculative; or he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented features.' The plaintiff complied with neither part of this rule. He produced no evidence to apportion the profits or damages between the improvement constituting the patented feature and the unpatented features of the mop, and the price at which it was sold. And of course it could not be pretended that the entire value of the mop-head was attributable to the feature patented."

Of course it can make no difference in the rule whether the unpatented features were in use before or only since the patent was obtained. In either case, the public are entitled to use them, and the patentee, therefore, has no right to recover damages which include such use.

In the other case (*Dobson* v. *Carpet Co.*) the patent was for a design in the manufacture of carpets, and the complainants sought to recover damages to the amount of the difference between the cost of manufacture to him and his selling price for the number of yards manufactured by

the defendants. This was allowed by the court below, and substantial damages were awarded. On appeal, this part of the decree was reversed, and only six cents damages allowed. Mr. Justice BLATCHFORD, delivering the opinion of the court, after taking judicial notice of what is common knowledge, that there is an infinite variety of patterns in carpets, and that between such as are of equal intrinsic merit, as to durability of fabric and color, and equally pleasing in pattern, some having an unpatented design, but one protected by a patent, said it did not follow that the latter would necessarily command the larger price in the market. "If it does, then the increased price may be fairly attributed to the design, and there is a solid basis of evidence for profits or damages. But short of this, under the rules established by this court, there is no such basis. The same principle is applicable as in patents for inventions. The burden is on the complainant, and if he fails to give the necessary evidence, but resorts instead to inference, conjecture, and speculation, he must fail for want of proof. There is but one safe rule,—to require the actual damages or profits to be established by trustworthy legal proof." Again he says, at page 445:

"Approval of the particular design or pattern may very well be one motive for purchasing the article containing it, but the article must have intrinsic merits of material and structure to obtain a purchaser, aside from the pattern or design; and to attribute in law the entire profit to the pattern, to the exclusion of the other merits, unless it is shown by evidence as a fact that the profits ought to be so attributed, violates the statutory rules of actual damages, and of profits to be accounted for."

The pertinency of this language to these cases in hand is so conspicuous that I need not dwell upon it. It is only necessary to make the doctrine concrete by applying it to spring-tooth harrows, and the specific feature of the tooth arching over the frame, of the Garver patent.

The result is that I cannot doubt that the court erred upon confirming the former accounting, and adopted the wrong rule in the computation of profits to be recovered. What the complainants seek now is, confessedly, the profits derived by the defendants in their infringing business, though the reports seem to cover also damages to complainants; and they are undoubtedly entitled to recover them,—not the whole profits of the business, but such profits as they can show are attributable to the use by the defendants of their device claimed under the Garver patent. But, while the profits are what the complainants are now professedly pursuing, the rule would be the same if the inquest were one of damages to complainants, as, indeed, it should be; for the underlying principle is the same, and is not affected by the mode of redress elected. That this is so is very clearly indicated in the opinion of the supreme court in *Dobson* v. *Hartford Carpet Co.*, above cited.

It appears to me to be clear that the other rule than that adopted by Judge WITHEY is the one applicable here, because the patent is not one covering the entire structure of spring-harrows. It does not include the frame which is used, that being substantially the old Scotch harrow frame. Nor does it cover springing teeth, except as they contain the

peculiar feature already mentioned. Nor, to make the exclusion short, does it cover anything else than those peculiarities included in the claims which have been sustained by the court as herein stated and explained. As was to be expected, the master has, on this accounting, proceeded on the principles laid down on the first; and it unfortunately happens that the record is in such shape that the facts necessary to come to a right conclusion are not, in view of the opinion entertained on the law of the case, in proper or sufficient presentation.

If the present view is right, and the supreme court should adopt it, it is to be feared that the consequences of leaving matters in their present shape, and confirming this report, would be that, when the cases should reach a final determination in the appellate court, that court would be without the means afforded by the record of awarding that redress to which the complainants are apparently entitled, and be under the necessity of awarding them nominal damages only; and, in any event, it is very clear that the most prudent course will be to sustain the present exception, and recommit the matter of reference to the master, with instructions·to take such additional evidence as the parties may see fit to offer, and to make further report·in conformity with the principle of this opinion. In this way all the material necessary will probably be brought before the court, so that, whatever view may ultimately be held as to the correctness of the opinion now expressed, as has already been said, the court may be able to accomplish justice between the parties. This opinion is much longer than would have been necessary if I had not felt ·it to be proper that the reasons which have compelled me to adopt a different conclusion from that hitherto reached by the court should be fully stated, and with as much distinctness as was practicable.

In the present situation, I should recommend to the parties that the order confirming the former report be opened, and that a like order be made in that matter as is directed in, this, for the objects herein indicated as desirable. No motion of that kind is made, and I should prefer that the parties consent to that course rather than be compelled, when the final decree comes to be made, to go back and revise the earlier proceeding; for, as already indicated, the whole matter is yet within the control of the court, and it is its duty to correct any error which it may conceive it has fallen into, at any time before final decree and the subject has passed beyond its reach. *Perkins* v. *Fourniquet*, 6 How. 206; *Fourniquet* v. *Perkins*, 16 How. 82; *Wooster* v. *Handy*, 21 Fed. Rep. 51.

If such consent is given, both matters may be included in one order.