ROBBINS et al. v. ILLINOIS WATCH CO.

(Circuit Court, N. D. Illinois. January 30, 1897.)

1. PATENTS—INFRINGEMENT—ACCOUNTING FOR PROFITS.
    Where the books of a corporate infringer of a patent for an improvement
    in watches and the testimony of its officers and employés fail to show any
    profit on the infringing watches, the profits made by another manufacturer on
    watches claimed to be of the same grade cannot be taken as the measure of
    profits, and no decree for profits can be made.

2. SAME—APPORTIONMENT OF PROFITS.
    Defendant made and sold, as an entirety, watch movements on which it
    placed infringing stem-winding and hands-setting devices; but no profits were
    made on such sales. Held, that there was no sum to which any possible ap-
    portionment could be made, as between the infringing devices and the move-
    ment proper, and no profits could be recovered.

3. SAME.
    An infringer is under no obligation to the patent owner to so use the pat-
    ented device or to so manage his infringing business as to make a profit, for
    which he may be compelled to account.

This was a suit in equity by Leroy E. Robbins and Thomas M.
Avery against the Illinois Watch Company for alleged infringement
of reissued letters patent No. 10,631, issued for an improvement in
stem-winding watches. The cause was heard on exceptions to the
report of the master, to whom it was referred to take an account
of profits.

Lysander Hill and Prindle & Russell, for complainants.
Bond, Adams, Pickard & Jackson, for defendant.

SHOWALTER, Circuit Judge. Complainants sued for the in-
fringement of reissued letters patent of the United States, No. 10,-
631. After a hearing in the circuit court defendant was found
guilty of infringement, and a perpetual injunction was awarded, and
the case referred to a master, to take testimony and report his con-
clusions on the matter of damages and profits. Defendant prayed
an appeal from so much of the decree as adjudged the infringement
and awarded the perpetual injunction. The court of appeals af-
firmed the decree. The circuit court opinion is found in 50 Fed.
542; the opinion of the court of appeals, in 3 C. C. A. 42, 52 Fed. 215.
The cause now comes on again on exceptions by the defendant to the
report of the master pursuant to the reference for the accounting.

In reaching his conclusions and making up his report the master,
following what he conceived to be the theory of the patent as de-
clared in the opinion of the court of appeals, held the watch move-
ment itself, as constructed with the winding and hands-setting mech-
anism,—in other words, the entire watch, exclusive of the case,—to
be the subject-matter of the patent and of the infringement. He
finds that the defendant has made and sold such uncased watches

to the number of 12,886, and has realized as profit on such manufactured articles the sum of $25,337.58. The master does not find that any damage has resulted to complainants in consequence of the infringement. I infer, from the report and the arguments of counsel, that the evidence taken on the subject of damage would not have warranted a finding against defendant on that account. The master recommends a decree against defendant for the $25,337.58 as the profits realized by it on the 12,886 uncased watches.

By the decree of reference the master was authorized to examine the books, records, and memoranda of the defendant, and its officers, agents, and employés were required to appear and testify, either at Chicago or at Springfield, where the defendant's business was carried on. There is no suggestion in the report that a full investigation was not afforded in this way. So far as this evidence and testimony went, it appeared that there had been no profit in the business of defendant in making and selling watch movements; that is to say, uncased watches. The selling price of the 12,886 in question was shown, but it did not appear, from the defendant's books, records, and memoranda, or from the testimony of the defendant's officers, agents, or employés, that these uncased watches had cost the defendant less than the selling price. The master, against the objection of defendant, permitted the books of the two beneficiaries for whom complainants are apparently trustees, namely, the Waltham Company and the Elgin Company, to be examined touching grades of watch movements or uncased watches alleged to be similar to the 12,886 manufactured and sold by defendant. The books of the Waltham Company did not show the cost, but those of the Elgin Company, in connection with the testimony of witnesses, did. What would have been the cost to the Elgin Company of 12,886 uncased watches, claimed to be of the same grade as those made by defendant, was subtracted from defendant's selling price, and the remainder is the $25,337.58, treated by the master as the defendant's profit, and for which the decree is recommended.

If, in fact, the cost to defendant in providing material, and manufacturing and selling the 12,886 uncased watches, was less than the price realized on the sale, the difference would be defendant's profit. But, assuming (which defendant disputes) that the uncased watches made by the Elgin Company were substantially the same as the 12,886 made by defendant, the cost to the Elgin Company did not prove the cost to complainants. The testimony and records showing cost to the Elgin Company have no efficacy to show the cost to the defendant. Even if it were conceded, or proven in some way, that defendant did make some undetermined profit on the 12,-886 uncased watches, I am not quite ready to say even that the presumptions as to the amount would be against defendant, or that the burden of the proof to fix the amount would be on the defendant. But here, at all events, the fundamental fact is wanting. There is no showing that defendant made any profit whatever on the manufactured articles in question. There is no showing that profits recoverable by complainants have been mingled with property of defendant. There was no duty or obligation, from defendant to com-

plainants, whereby the former was bound to make a profit, and is to be deemed in the wrong if it did not. The attitude of defendant is not, prima facie, that of a trustee vested with a valuable patent, belonging in equity to complainants, and bound to manufacture and sell the patented device, and make and pay over to beneficiaries a reasonable profit. Yet this, in substance, was apparently the prevailing theory in the master's office. The profit made by the Elgin Company was in effect treated as showing the reasonable profit that ought to have been made by defendant. The vital question here was whether or not defendant, in manufacturing operations as actually conducted by it, had in fact made any profit on the 12,886 uncased watches. Following, as already said, what he deemed to be the view stated in the opinion of the court of appeals, the master, against the objection of defendant, ruled that the profit on the uncased watch—meaning, as said, the entire watch movement, having on it the winding and hands-setting mechanism—was the subject-matter of the reference. The winding and hands-setting mechanism of the patent in controversy performed the function of the old watch key,—the function, namely, of winding the watch and of setting the hands, when they needed readjustment, to correct positions on the dial.

It is said that the winding pinion is attached on the inner side of the plate, and that a hole must be cut therein, and the axle or arbor or spindle must be extended through, and a hole cut in the watch face, in order to use a key to wind the watch. But this does not affect the question. The invention in controversy is still a combination having for its function the winding the watch and the setting the hands, whereas the function of the watch movement is to revolve the hands about the dial, and so mark the flight of time. The patent in controversy is no more an improvement in watch movements than would have been a modification bettering the old-fashioned watch key. Stem-winding watches were in the art. The patent on its face is for "an improvement in stem-winding watches." The patent in suit shows a stem arbor with the inner end cut off, and forming an independently movable block. When the stem arbor, thus shortened, is in its outermost position, the block is pressed outward by one arm of a lever, through the free action of a spring which bears against another arm of the same lever, and at the same time and by the same impulse the yoke is thrust into position, so that the dial wheel may, by the revolution of the stem arbor, be turned, and the hands set. When the stem arbor is pushed inward, it presses the block against the lever, and the yoke is thereby rocked from the hands-setting position into the winding position. When the stem arbor is pulled out again the free action of the spring presses the block into the space made vacant by the stem arbor, and the yoke takes once more the hands-setting position. The stem arbor is thus disconnected from the yoke mechanism. The latter, as said, takes the hands-setting position by means of the spring when the stem arbor is pulled outward, and by the inward push of the stem arbor against the block the winding position is attained. By this means the stem arbor does not prevent the exchange of differ-

ing cases for the same movement, and this is the useful result ascribed to the invention. The combined yoke, block, lever, spring, and wheels, being the portion of the winding and hands-setting mechanism attached to the movement, is no more part of the movement than is the stem arbor part of the case.

Defendant made and sold watch movements,—that is to say, uncased watches. On these movements defendant put that portion of the infringing device for winding and setting which is not necessarily placed in the watch case. The question before the master was, what profit did defendant realize by this use of the infringing device? Each of the 12,886 movements, with the infringing winding and hands-setting mechanism thereon, was made and sold as an entirety. Since, so far as appears, no profit resulted, there is no sum to which any possible apportionment of cost or selling price, as between the winding and hands-setting mechanism and the movement proper, could be applied. The entire profit on an uncased watch might be in fact due, for instance, to a patent winding and hands-setting device with which the movement is associated. But, if the selling price of such uncased watch did not exceed the cost of making it, no profit would come to the infringing manufacturer for the complaining patentee. The patent, as actually used by the infringer, would not, in fact, have yielded anything in the way of profit to be recovered. That a greater loss might have resulted if the 12,886 movements, associated with any winding and hands-setting mechanism which the defendant had the right to make use of, had been made and sold, is an idle speculation. As already said, there is no obligation on an infringer to the patentee to so use the patented device, or to so manage his business operations in that behalf, that a profit will result. I speak here only of profit. Even a losing business by an infringer might very easily injure the patentee by damaging his market. But damages are not here claimed.

I sustain the exceptions, other than those which pertain to costs. I doubt if that subject were within the reference. For the reasons given, I think the matter need not be sent again to the master. The decree will be for a nominal sum as damages and profits, complainants to pay the cost of the reference.