KANSAS CITY HAY PRESS CO. v. DEVOL et al.

(Circuit Court, W. D. Missouri, W. D. January 25, 1904.)

No. 1,987.

1. PATENTS—SUITS FOR INFRINGEMENT—MEASURE OF DAMAGES AND PROFITS RECOVERABLE.

Where the patent infringed is for an improved part only of a machine, the other parts being open to defendants' use, the burden rests on the complainant to separate or apportion his damages and defendants' profits between the patented and the unpatented features, or to show that the entire value of the machine as a marketable article is attributable to the patented feature, and, in the absence of reliable and tangible evidence to sustain such burden, he is entitled to recover only nominal damages and profits.

2. SAME—DAMAGES—BURDEN OF PROOF.

The burden also rests upon complainant to show an established license fee for the use of the patented device, or to establish by satisfactory evidence the actual damage to his business by reason of defendants' competition as a basis for the computation of damages; otherwise he can recover only nominal damages.

3. SAME—COMPUTATION OF PROFITS—SERVICES OF DEFENDANTS.

In computing the profits of an infringement by a partnership, defendants are not entitled to be credited with the value of their own services, or with sums paid them by the firm for work done in the manufacture of the infringing article, as a part of the cost of such manufacture.

4. SAME—COSTS OF REFERENCE.

The general rule is that, where a complainant recovers only nominal damages and profits on an accounting for infringement, the costs of the

¶ 4. See Patents, vol. 38, Cent. Dig. § 610.

reference are taxed against him; but, like other matters of costs in suits in equity, the rule is subject to modification in a particular case, in the discretion of the court, as may be equitable under the circumstances.

In Equity. Suit for infringement of patents. On exceptions to master's report as to damages and profits.

C. F. Mead, for complainant.
Geo. A. Neal, for defendants.

PHILIPS, District Judge. This is a suit in equity to enjoin the defendants from infringing patents claimed by the complainant. The complainant claimed under six distinct patents, covering the combined hay press. As to five of the patents the issues were found for the defendants, and the bill dismissed as to them. The issues were found for the complainant as to one of the patents, with a decree of injunction, with directions to ascertain the profits and damages consequent upon the infringement. These matters were referred to John D. Parkinson, Esq., as special master, who has filed his report herein. Both of the parties have filed exceptions to the master's report and his conclusions on the law and the facts. The exceptions are numerous, but the discussion of the court will be limited to a few questions of law which, in its opinion, are conclusive of this controversy.

On the hearing of said exceptions the court felt impressed with the apparent injustice to the complainant of the conclusion of the master that it was only entitled to nominal profits and damages, in view of the fact that the defendants had wrongfully employed in their business the patented device of the complainant for a considerable length of time, realizing, as the master finds, considerable profit on their business. But after a careful reading of the exhaustive, painstaking, and well-considered report of the master, and examination of the authorities for itself, the court does not see any legal escape from the master's conclusions.

As already stated, the bill of complaint declared upon six patents, covering practically the entire mechanism of the hay press in question. One covered certain essential qualities of the baling case or hopper; another the folding apron, carrying the hay to the hopper; another pertained to the draft pole; and so on. These were adjudged by the court not to have been infringed by the defendants. In other words, their use was open to them. The patented invention which the court held to have been infringed by the defendants covers a device for controlling the pitman by actuating the plunger or traverser in the baling chamber, the effect of which is to increase the power applied to the pitman, packing the hay with greater facility and more densely. While the patented device of the complainant was an improvement in the hay press, it did not constitute an independent, complete hay press, but was used in combination with prior patented parts, constituting a baling press, which other parts the defendants had the right to use, and which had been used for baling hay without the complainant's device, which anterior inventions the complainant used in connection with its improved device. It is to be conceded that with the improvement made by the complainant the press was made more useful and efficient.

The contention of complainant's counsel is that inasmuch as the defendants employed in the construction of their machines devices free to their use, and also the complainant's device, they should be held to account for the entire profits, as for a failure to keep separate the profits derived from the use of complainant's improved device, invoking the equity rule that where one wrongfully mingles his goods with those of another so that they are indistinguishable from the mass the latter is entitled to take the whole. This unquestionably is the rule in respect of the invasion of a copyright, where the wrongdoer has mingled in the book matter to which a copyright does not properly extend with matter covered by the copyright, "the two necessarily going together when the volume is sold as a unit, and it being impossible to separate the profits on the one from the profits on the other, and the lawful matter being useless without the unlawful." The value of the book in such case depends entirely "on its completeness and integrity." Callaghan v. Myers, 128 U. S. 617, 664, 9 Sup. Ct. 177, 32 L. Ed. 547.

But this rule is not applicable to the case at bar. In effect, the precise contention of complainant's counsel was made in the case of Seymour et al. v. McCormick, 16 How. 480, 486, 487, 14 L. Ed. 1024. In that case McCormick obtained a patent for new and useful improvements in his reaping machine, the principal of which was giving to the raker of the grain a convenient seat upon the machine, etc. It was therefore a case where the complainant was entitled to relief for the invasion of his patented device, but not on the entire machine, combining other inventions open to the defendants. The trial court in that case rejected the contention of counsel for defendants "that inasmuch as the claims of the plaintiff in question here are simply for improvement upon his old reaping machine, and not for an entire machine and every part of it, the damages should be limited in proportion to the value of the improvements thus made, and that therefore a distinction exists, in regard to the rule of damages, between an infringement of an entire machine and an infringement of a mere improvement on a machine." This ruling of the Circuit Court was overruled by the Supreme Court.

In Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, the claim was for an improvement in the process of manufacturing cast iron railroad wheels. This patented improvement was used in combination with anterior inventions open to the defendants. There, as here, it was claimed that where the defendant employed, in connection with the anterior devices open to him, the complainant's improvement, he should be held to account for the entire profits on his sales. The court held that this was error; that it was incorrect to hold "that the benefit which the defendant derived from the use of the complainant's invention was equal to the aggregate of profits he obtained from the manufacture and sale of the wheels as entireties, after they had been completed. It is as true of a process invented as an improvement in a manufacture as it is of an improvement in a machine that an infringer is not liable to the extent of his entire profits in the manufacture. * * * The patentee does not claim to have been the in-

ventor of the constituents. The exclusive use of them single is not secured to him. What is secured is their use when arranged in the process. Unless one of them is employed in making up the process, and as an element of it, the patentee cannot prevent others from using it. * * * The defendant was not, therefore, responsible for slow cooling alone, or for the profits he derived from it. He was liable to account for such profits only when he used slow cooling in connection with reheating in the manner described in Whitney's claim substantially."

In Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, the patent was for an improvement, in the construction of mop heads, "in the method of moving and securing in place the movable jaw or clamp of a mop head. With the exception of this mode of clamping, mop heads like the plaintiff's had been in use time out of mind. Before the master the plaintiff proved the cost of his mop heads, and the price at which they were sold, and claimed the right to recover the difference as his damages. Of this Mr. Justice Field said:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below: 'The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'"

And in view of the fact that the complainant did not furnish evidence apportioning the profits or damages between the improvement constituting the patented feature and the other features of the mop head, and the entire value of the mop head was not attributable to the feature patented, it was held that the profits and damages were only nominal. This rule was reaffirmed in Dobson et al. v. Hartford Carpet Co., 114 U. S. 439, 445, 5 Sup. Ct. 945, 29 L. Ed. 177; Dobson v. Doran et al., 118 U. S. 11, 6 Sup. Ct. 946, 30 L. Ed. 63. So in Blake v. Robertson, 94 U. S. 728, 24 L. Ed. 245, the infringed patent was for an improvement in machines for crushing stone. The court said:

"No license fee charged by the complainant is shown. The burden of proof rests upon him. Damages must be proved; they are not to be presumed. The complainant made a profit of forty dollars an inch on the width of the jaws of the numerous machines he had sold. But inventions covered by other patents were embraced in those machines. It was not shown how much of the profit was due to those other patents, nor how much of it was manufacturer's profit. The complainant was therefore entitled only to nominal damages. This the court gave him. It was all the state of the evidence warranted. It would have been error to give more."

This question is fully and finally answered in the case of Keystone Manufacturing Company v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, in which Mr. Justice Shiras presented a summary of

the decisions. That case is strikingly apposite to the one at bar. The infringing patent was for an improvement in cornshellers. Under prior inventions a marked defect in cornshellers consisted in the choking of the chute through which the ears of corn dropped to the sheller, so wedging against each other as to clog the sheller, occasioning delays and necessitating the employment of an additional helper in its operation. The complainant's device was intended to remedy this defect, and was largely successful. There, as here, the complete machine was made up of prior invented parts, which, in combination, made a cornsheller, but of imperfect operation, which, being supplemented with the complainant's device, constituted a better and more useful machine for shelling corn. The defendant, by using the improvement in connection with the older inventions open to him, was guilty of an infringement. The record of that case, as in this, did not show that the complainant sought to recover a license fee for the use of his device, or even that he had such established fee to constitute a basis for the ascertainment of profits or for fixing a measure of damages. "He relied entirely on the proposition that the amount which he was entitled to recover could be based on the profits realized by the defendant from the sale of the patented invention, and the amount of such profits he claimed to have shown by evidence tending to show what certain third parties were alleged to have made from the sale of similar devices in similar cornshelling machines." This contention, not only on account of the character of evidence relied on to ascertain the profits, but on the main proposition, was rejected by the Supreme Court, and the learned justice summed up the established rules as follows:

"It is competent for a complainant, who has established the validity of his patent and proved an infringement, to demand, in equity, an account of the profits actually realized by the defendant from his use of the patented device; that the burden of proof is on the plaintiff; that where the infringed device was a portion only of defendant's machine, which embraced inventions covered by patents other than that for the infringement of which the suit was brought, in the absence of proof to show how much of that profit was due to such other patents, and how much was a manufacturer's profit, the complainant is entitled to nominal damages only."

The conclusions of the master in this respect are sustained by the following rulings on the circuit: Ingels v. Mast, 1 Flip. 424, Fed. Cas. No. 7,034; Fay v. Allen (C. C.) 30 Fed. 446; Reed v. Lawrence (C. C.) 29 Fed. 915; Bostock v. Goodrich (C. C.) 25 Fed. 819; Calkins v. Bertrand et al. (C. C.) 8 Fed. 755; Ingersoll v. Musgrove et al., 14 Blatchf. 541, Fed. Cas. No. 7,040; American Nicholson Pavement Company v. Elizabeth et al., 1 Ban. A. 439, Fed. Cas. No. 309; and Robbins et al. v. Illinois Watch Company (C. C.) 78 Fed. 124.

The bill of complaint in the case at bar, as already stated, is based upon an infringement of six different patents claimed by the complainant, covering the entire hay press. Five of these were rejected by the court, and only one sustained, pertaining to the activity of the power made by the pitman in pressing the hay in the baling chamber. Counsel throughout, before the master, proceeded upon the theory that in the accounting the complainant was entitled to recover the entire profits realized by the defendants out of the manufacture and sale of the combined hay press, upon the assumption that it devolved upon the

defendants, if they would limit the recovery, to show what proportion thereof arose from the use of the infringed device, or that the evidence showed that but for the employment of the complainant's improved device the defendants' machine would have had no market value. There was, therefore, no attempt on behalf of its counsel to furnish the master any reliant data for a separable ascertainment of the profits, nor did the evidence show that the entire market value of the machine manufactured and sold by the defendants depended solely upon the use of the complainant's device. They proceeded upon a misconception of the law as applied to the case under review. The master in such complexity could do no otherwise than report that the profits were only nominal.

In respect of the damages the same conclusion follows, unless the evidence shows that by reason of the use of the infringed device the sales made by the defendants were not only augmented, but for such sales their business would have fallen to the complainant. The master's report shows a close analysis of the antecedent sales of the complainant as compared with those during the infringing period, from which he was unable to find any tangible, reliant basis to support the conclusion that there had been any diminution of sales made or less business done by the complainant traceable to the defendants' competition, or the loss of any customers consequent thereon, and therefore the complainant is entitled to only nominal damages. The court is unable to discover such evidence in this record as would warrant the rejection of the master's conclusion in respect of this issue.

The discussion by Judge Blatchford in the case of Ingersoll v. Musgrove et al., 14 Blatchf. 541, Fed. Cas. No. 7,040, is quite pertinent. The infringed device in that case was for an improvement in a zinc cuspidor, with the bottom loaded with iron filings. The court said that whether the prices received by the plaintiff in the sale of his cuspidors were less than what he would have received but for the defendant's infringement, as also the amount of the reduction, how much thereof was attributable to the acts of the defendant, as also how much was attributable to the fact that the infringing articles sold by the defendant contained the patented feature of the plaintiff, were questions of fact. Likewise the question as to whether, if the defendant had not sold with the infringing device, the plaintiff would have sold a greater number than he did, and what profit he would have realized, and what part of such profit should be assigned to the distinctive feature, are questions of fact, to be established by the plaintiff "by satisfactory evidence, not only that a reduction of his prices was caused by the infringements, but how much such reduction was, and how much of it was occasioned by the acts of the defendant, and how much was due to the fact that the infringing articles contained the patented feature of the plaintiff's patented cuspidors. * * * The evidence on which those conclusions were reached was in the shape of estimate and conjecture and opinion, and afforded no proper basis for a report of actual damages by a forced reduction of prices. * * * So, also, it is for the plaintiff to establish, by satisfactory evidence, that he would have sold more of the patented cuspidors than he did sell if the infringing cuspidors had not been sold, and what profit he would

have made on them, and what part of such profit is to be assigned to the distinctive patented feature of the cuspidors." And inasmuch as the plaintiff's evidence, without resorting to speculation and conjecture, failed in the given respect, only nominal damages were awarded.

Complaint is made on behalf of complainant that the master erred in holding that the machine known as the "Star" was not before him to be taken into the accounting of profits and damages. The contention on the part of the defendants is that the "Star" machine was invented by them in 1895; patent applied for in April, 1895, which application was allowed by the patent office in January, 1897; that the defendants did not begin the manufacture and sale thereof until after the institution of this suit; that it was a different machine from the complainant's, and in any event the question of its infringement was not involved in this litigation. The contention on the part of complainant is that the "Star" was in fact an infringement of its said patented device employed in the manufacture of what is known as the "Farmer" press. Without stopping to determine which of these contentions is correct, or whether such matter was involved in the decree of the court, it is sufficient to say that, if it be conceded that the "Star" was an infringement of the "Farmer" machine, it would not change the result. While the master in his report has found and states the amount of profits arising from the sale of the "Star" machine, yet, since the complainant's evidence utterly fails to separate the profits and damages on the noninfringing from the alleged infringing device in respect of the manufacture and sale of the "Star" press, the same result follows. The same blunder is common to all.

The defendants have pressed with some zeal some of their exceptions taken to the master's report and findings. For instance, it is claimed that the master erred in rejecting, in the computation of profits chargeable against the defendants, the salary paid to Livengood, one of the defendants, who was an expert machinist, and for moneys advanced by one of them to the concern. The defendants were a partnership, and not a corporation. This contention is fully met by the ruling in Callaghan v. Myers, 128 U. S. 663, 664, 9 Sup. Ct. 190, 32 L. Ed. 547. There the defendants contended that the master erred in disallowing to the defendants credits for amounts paid to the different members of the firm for their services in the way of salaries, as a part of the expense of conducting their business, amounting to $12,000 a year, which was drawn by the defendants under a partnership agreement as family and personal expenses. The court said:

"We do not think that the value of the time of an infringer, or the expense of the living of himself or his family, while he is engaged in violating the rights of the plaintiff, is to be allowed to him as a credit, and thus the plaintiff be compelled to pay the defendant for his time and expenses while engaged in infringing the copyright. If the defendants, instead of employing others to do the work, had chosen to do it themselves, they might as well have made a charge. and claimed to have been credited for it, of so much a month or a year for their services in preparing the infringing volumes. The case stands on a different footing from that of the salaries of the managing officers of a corporation."

So the $9,000 advanced by the defendant H. F. Devol to their business, or for the payment of debts of the copartnership, was rightly re-

jected by the master, not only because it was paid after the institution of this suit, but because the master, in effect, in taking account of the profits, necessarily took into account the debits of the concern, and if the defendants were to be allowed this post credit they would in effect have received a double credit. But these matters are of no practical consequence to the defendants in view of the finding of the master that the complainant is only entitled to nominal profits, when the rejection of the Livengood claim would not have made the sum of the credits equal to the profits.

The Matter of Costs: The rule of practice, generally, seems to be that where the complainant recovers only nominal profits and damages the costs of reference and the proceedings thereunder are taxed against him. Ingersoll v. Musgrove, supra; Everest v. Buffalo L. O. Co. (C. C.) 31 Fed. 742; Kirby v. Armstrong et al. (C. C.) 5 Fed. 801; Robbins v. Illinois Watch Company (C. C.) 78 Fed. 124.

In some, if not most, of these cases the reports showed that no profits had been realized in the defendants' business. The awarding of costs for or against a party in equity rests largely in the sound discretion of the chancellor, to be exercised according to the circumstances of the particular case. It is difficult for the impartial mind, on reading the evidence in this case, to escape the impression that the defendants did reap some advantage from the use of the infringing device, although the quantum, under the evidence furnished by the complainant, is quite impossible of approximate definite ascertainment. In view of this situation, the court deems it just to divide these costs equally between the parties.

It results that the exceptions of both parties are overruled, and the conclusions of the master are affirmed.