### DOWAGIAC MFG. CO. v. BRENNAN & CO. et al.

(Circuit Court of Appeals, Sixth Circuit. December 24, 1903.)

No. 1,208.

1. PATENTS—VALIDITY AND INFRINGEMENT—GRAIN DRILLS.

The Hoyt patent, No. 446,230, for an improvement in grain drills, consisting of spring pressure rods operated by a lever for depressing the shoes in operation on uneven ground, and used for raising them from the ground when not in operation, is valid, and claims 1 to 3 are infringed by the device of the Christman & Munn patent, No. 497,864, in which the pressure is applied by means of equivalent mechanism; and although the connection between the spring rods and the coupling rod through which the power is applied is in front, instead of in the rear, of the hopper, and the function of raising the shoe from the ground is transferred from the former to the latter, the two conjointly perform the same functions in substantially the same manner, the change being one of form only.

2. SAME—RULE IN RESPECT OF EQUIVALENTS.

The range of equivalents covered by a patent for machinery corresponds with the character of the invention, and includes all forms which embody the substance of the invention, and by like mechanical co-operation effect substantially the same result.

3. SAME—IDENTITY OF COMBINATION CLAIMS.

The substantial identity of a mechanical combination is not affected by the circumstance that one of its members is also adapted for connection with other parts of the machine not included in the combination.

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

For opinion below, see 118 Fed. 143.

Fred L. Chappell and Otis A. Earl, for appellant.

Paul A. Staley, Border Bowman (John R. Bennett, of counsel), for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. The complainant, the Dowagiac Manufacturing Company, brought this suit in equity charging the defendants with the infringement of letters patent No. 446,230, granted to W. F. Hoyt, February 10, 1891, and subsequently assigned to the complainant, for new and useful improvements in grain drills, and relating particularly to those parts of shoe drills (so called) employed to depress the shoe and covering wheel when in operation, and to raise the same parts out of contact with the ground when the drill is not in operation but is being moved from place to place on the wheels which support it. This patent was the subject of the suit in the case of McSherry Manufacturing Co. v. Dowagiac Manufacturing Co., reported in 101 Fed. 716, and 41 C. C. A. 627, wherein this court, affirming the decree of the Circuit Court in respect to the first three

claims, held the patent valid and infringed by the manufacture of the structure there complained of. That case was decided May 8, 1900. Subsequently a suit was brought on the same patent in the Circuit Court of the United States for the District of Minnesota by the same complainant against the Minnesota Moline Plow Company for infringement by the manufacture (or sale) of two forms of the patented devices, one of which was substantially, if not identically, the same as that of the McSherry Company, and the other a modified form of similar devices. Judge Lochren held the Hoyt patent valid and infringed by the first of those structures, but not infringed by the latter. The case was taken by appeal to the Circuit Court of Appeals for the Eighth Circuit, where, in an opinion by Judge Carland, the patent was held valid and infringed by both of the structures complained of, Judge Thayer dissenting upon the question of infringement by the second or modified form above mentioned, but concurring with the majority upon the other questions in the case. 118 Fed. 136, 55 C. C. A. 86. An application was made for a certiorari to the Supreme Court, but was denied by that court. 187 U. S. 644, 23 Sup. Ct. 843, 47 L. Ed. 346. It is proper to say of this case that the lower court followed the decision of this court in the McSherry Case in respect to the validity of the Hoyt patent, but that the majority of the Circuit Court of Appeals held the patent valid upon its independent judgment, though the opinion declares that if it had been in doubt it would have followed this court upon the principle of comity. The patent was also held valid and infringed by Judge Lochren in a similar suit against Smith & Zimmer by the same complainant. 108 Fed. 67. Another suit was brought complaining of the infringement of this patent, against Fowler and another, in the Circuit Court for the District of North Dakota. Judge Amidon was unable to agree with the views of this court and the holding of Judge Lochren in respect to the validity of the patent, and dismissed the bill. This, we understand, was prior to the decision of the Circuit Court of Appeals of his circuit in the Minnesota Moline Plow Co. Case. An appeal was taken in the Fowler Case to the Circuit Court of Appeals, where, Judge Thayer delivering the opinion of the court, it was held that the first three claims of the patent (being the same as those here sued on) were valid and infringed. 121 Fed. 988, 58 C. C. A. 643. We will not stop now to go into a detail of the structures which, in the cases referred to, were held to infringe, but shall refer to some of them when we come to a comparison of them with that of the present defendant, and consider the effect which the decisions thereon ought to have in the determination of the controversy involved in this appeal.

The claims of the patent alleged to be infringed are the first three of those involved in the McSherry Case, and which this court held valid. They are, for convenience, here reproduced:

"(1) In combination with the transporting wheels and frame, the hopper, shoe, and draft rods, the latter having a pivotal connection with the frame, the clamping plates having a pivotal connection with the draft rods, the spring-metal pressure rods attached to said plates, said rods extending rearwardly of the hopper, the forked arm coupled to said rods, and means for raising and lowering said arm, substantially as specified.

"(2) In combination with a frame of a grain drill, the hopper having a

flange at the upper end, the shoe attached to the hopper, the curved draft rods leading from the shoe and having a pivotal connection with. the frame of the machine, a swinging head located between the upper ends of the draft rods, spring-metal rods attached to the swinging head, said rods extending back of the hopper and below the flange thereof, said spring-metal rods being coupled to an arm, said arm having means for raising and lowering it, and means for locking the parts, for the purpose set forth.

"(3) In combination with the frame, hopper, shoe, and draft rods, the plates pivotally attached between the upper portions of said draft rods, said plates having the horizontal shoulders, said shoulders bearing upon the draft rods, the spring-metal rods attached to said plates and passing rearward of and on opposite faces of the hopper, and means for applying pressure to the rear ends of said spring-metal rods, for the purpose specified."

With respect to their validity we do not feel called upon to go into prolonged discussion, as that question must now be regarded as settled, unless something new has been developed in the present case which ought to lead us to a different conclusion from that reached in our previous decision and that of the Circuit Court of Appeals for the Eighth Circuit. It must suffice to say that, although the volume of former patents has been considerably augmented in this record, we find nothing that has better ground for being regarded as an anticipation of the Hoyt patent, or as effecting a limitation of it, than had been shown in former suits. The validity of the patent is a thing which must be regarded as adjudged, and must be accepted as the starting point for discussion.

The case, therefore, must turn on the question of infringement. And upon this point it is contended for the defendants that the invention of the patent in suit is so restricted by the prior art and the limitations of the terms of the patent as not to include the construction employed by it in its drills. The court below was of that opinion, and dismissed the bill. Before discussing the characteristics of the defendants' structure, it will be convenient to re-examine with some particularity the Hoyt invention and ascertain its character and its limitations. The objects which the inventor had in view were twofold, first, to provide means for depressing the shoes of the drill to meet the requirements of its movements when in operation upon differing and uneven surfaces, and, second, to provide means for lifting the shoe and its attachments off the ground while the drill is being moved from place to place. There were in use devices for both these purposes, but they lacked the desired simplicity, convenience, and ease of management. The idea developed by Hoyt was to extend a lever from the rear part of the drill forward over a fulcrum resting on the drawbars of the shoe near their fore end and pivotally coupling the fore end of the lever with the drawbars. He proposed to make the lever of a spring and extend it rearwardly to connections through which it could be operated by the arm of a rock shaft extending across the rear part of the drill, or other means known to the art. The rear end of the lever would be depressed or released by slightly revolving the rock shaft, or by other means employed for that purpose. Then, to provide means to raise the shoe out of contact with the ground, he divided the lever and brought the parts alongside of the hopper and under a flange turned out from the upper end thereof, and connected them by a rod to the arm of the rock shaft or other source of power.

127 F.—10

As the hopper stands over the shoe and is rigidly connected therewith, the raising of the springs at the rear by the means above mentioned would engage them with the flange of the hopper and so lift the shoe. Thus both objects were accomplished by one combination of parts. Figures 1 and 2 of the drawings illustrate the means employed.

The pressure wheel, G, the rods, J, and the plates, T, which clamp them to the levers, I, may be obliterated, as they are not involved in the present suit. In Fig. 2, E is the shoe, H the drawbars, I the spring lever (divided), V the fulcrum of the lever resting on the drawbars, e, e, are flanges on clamping plates holding the forward ends of the lever, and through these flanges, e, e, the lever is pivotally coupled to the drawbars by the bolt, d, which extends through the flanges and the drawbars. K is the rock shaft on which N is the rigid arm, which through O actuates the rear end of the spring lever or levers, M is the handle of the rock shaft, and it is readily seen how by turning this handle forward the rear end of the spring lever is depressed, and by its bearing on the drawbars at the fulcrum, V, the shoe is depressed. Again, by turning the handle of the rock shaft backward, the arm, N, lifts the rear end of the spring lever into engagement with the flange on the hopper, F, and then through the hopper the shoe is lifted from the ground. These figures show clamping plates in which the fore end of the spring lever is imbedded and rigidly held,

and through which the lever is pivotally connected with the drawbars.

We think this was a highly meritorious invention, and that the simplicity of the structure devised was one of its chief merits. By means of it the shoes of the drill could be kept down to the proper depth in hard soil, each one could yield and rise on meeting an elevation in its path, or sink into a depression if that should be passed, and then resume its normal position. The same means are utilized for lifting the shoes and holding them from the ground when the drill was idle but being moved from place to place, and, although this advantage is not mentioned by the patentee, it is easy to see that by the construction he proposes the parts of the drill involved are more securely and firmly held in their proper relations while the drill is at work, notably the upper part of the hopper, which is supported against lateral movement. Some, perhaps all, of these advantages had, in a way, been supplied by the former art; but they had not, so far as we can see, been so completely gathered together or attained in so simple and useful a way. As no previous organization of parts composing this portion of a drill, designed to accomplish similar results and built upon the method of Hoyt's invention, nor anything nearly resembling it, is shown by the record, we think that the patent is entitled to stand for what the claims import, without any limitations imposed by the prior art that are relevant to the present inquiry. The range of equivalents covered by the patent corresponds with the character of the invention, and includes all forms which embody the substance of the invention, and by like mechanical co-operation effect substantially the same result. The decisions of the Circuit Courts of Appeals in the Eighth Circuit and in this circuit confirm and justify these views. The invention of the Hoyt patent has gone into extensive use, and the numerous attempts to employ it under one guise or another also attest its utility and value.

The defendants' structure is manufactured under a patent, No. 497,864, issued May 23, 1893, on the application of Christman and Munn. The following figure illustrates it, dismembered, as exhibited by the defendants:

. As will be seen the plate, b, has a pivot, i, which goes through the opening, e, at the end of the spring lever, which is larger than the pivot, and makes a loose connection therewith which permits a swinging motion of the lever up and down. The eyes in the fore end of the drawbar are put upon the trunnions, c, c, and the spring lever rests upon the fulcrum, P. The fulcrum is supported by a bolt, v, which runs also through the drawbars, with burrs on either end. The parts at the other end of the lever associated with the hopper are plainly shown by the figure, and will be referred to in another connection. Thus it will be seen that the pivotal connection of the spring lever of the defendants is made by pivoting it at the fore end on a pivot formed on the lower edge of a plate attached to the frame, and the drawbars are pivoted on pivots on the side edges of the same plate. Mechanically this construction amounts to the same thing as that of the Hoyt patent, where the lever and the drawbars are pivoted on a bolt. The plate performs the same function as the bolt. Each constitutes the medium by which capacity is given for effecting the hingelike motion of the lever and drawbars which the patentee intended. He does not limit himself to a particular manner of effecting the pivotal connection. He describes one method of carrying out his invention, but his claims cover all means which substantially represent it. And it is easy to see in the defendants' organization the very form and articulations of the Hoyt invention. The spring lever, the prop or fulcrum, and the pivotal connection of the lever with the drawbars are all present in the defendants' organization, and they co-operate in the same way as that proposed by the Hoyt invention. It is true that the plate serves also as a means of attachment to the frame of the drill, but it none the less serves as a member of the combination to effect the purpose of a pivotal connection between the lever and the drawbars. Hoyt does not confine the connection to any particular point on the drawbars. The purpose of it would indicate that it should be not far from their fore ends, and it equally answers the requirements if it is located quite at their fore ends.

In the McSherry Case there were no clamping plates in the defendants' structure, but the body of the spring lever was carried forward over a fulcrum resting on the drawbars and pivotally connected by a bolt running through lever and drawbars, and the defense depended largely on this omission of the clamping plates in the offending structure. But it was held, Judge Lurton delivering the opinion, that as the defendant had, in prolonging the spring lever, also supplied a fulcrum and a pivotal connection with the drawbars, and as the clamping plates of the patent were a mere prolongation of the spring lever for the purpose of providing a fulcrum and pivotal connection, the defendant had merely supplied an equivalent for the operative parts of the clamping plates, and had therefore infringed. The Circuit Court of Appeals for the Eighth Circuit in the Minnesota Moline Plow Co. Case, upon the same facts, concurred in this view. But it is material to notice that in that case there was another form of these parts which was alleged to be an infringement of the Hoyt patent not embraced by our own decision. In that form the spring levers were pivoted to the frame by slots in their fore ends which embraced a bolt between the

drawbars at their fore ends. Thus the pivotal connection of lever and drawbars was made by a common medium at their fore ends and at their attachment to the frame. Then there was a separate drawbar pivoted on a bolt between the drawbars running to the shoe at their fore end, and extending back to and engaging a fin projecting from the front face of the hopper. On this separate bar was the fulcrum on which the spring lever rested. It was claimed by the defendant in that case that by these variations they had avoided infringement. But the court held that, notwithstanding the changes of the forms of parts, the essential elements and the principle of their operation in the Hoyt patent had been appropriated and employed in the defendant's combination. It must, we think, be confessed that, if that case was rightly decided, it would be impossible to hold that the structure used by the defendants in the present case is not an infringement; for the differences of the very parts with which we are now dealing were the subject of decision, and those differences were mainly in the manner of effecting the pivotal connection. Judge Thayer dissented from this part of the decision. An application for a writ of certiorari was denied by the Supreme Court, which adds somewhat to the authority of that case, especially as the judge in the lower court had held to the same view as the dissenting judge. The judges who had considered the case were evenly balanced in numbers.

In the later case against Fowler and others, above referred to, the structure which was held to infringe the Hoyt patent consisted of a spring lever turned down and flexed near its fore end over a crossbar located between the draw-bars and secured to them, and then carried back between the drawbars to a point in the rear of what we have termed a "crossbar," over which the first bend was made, and over and around another crossbar located between the bars in a similar manner to the first. The effect of this was that, by pressing down the outer end of the lever, the inner end at its final attachment would press down the drawbars and the shoe. Apparently this contrivance would have the same operation and effect as if the lever rested on a fulcrum located at the place of final attachment, and had pivotal connection with the drawbars at the upper or first mentioned crossbar, where the lever was flexed on the drawbar. It was an ingenious attempt to obtain the advantages of the Hoyt invention by a change of form, apparently, but not really, establishing a difference of structure which would take it out of the bounds of the patent. The rear end of the lever, or, rather, an extension thereof, embraced the sides of the hopper under the flange thereof, and by these means the shoe was lifted off the ground in the same way and by the same means as in the Hoyt patent. In that case, as in this, the defendants' spring lever was single from the pivotal connection to a point in front of the hopper, and there divided to embrace it. But it was held, and we have no doubt correctly, that the principle was the same whether the lever was in two parts or one. The court, in an opinion by Judge Thayer, following the previous decisions holding the patent valid, held further that it was infringed by the structure complained of. The modifications of the Hoyt combination of parts were more radical and serious in that case than in the present. A number of our

own decisions, and some by other courts, bearing upon the subject of infringement by employing equivalent means to secure the advantages of a former invention, are collected in Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36, at pages 904, 905, 115 Fed., pp. 54, 55, 53 C. C. A., that case being itself an illustration. In delivering the opinion in Cochrane v. Deener, 94 U. S. 789, 24 L. Ed. 514, Mr. Justice Bradley, applying the doctrine of equivalents, said:

"Though some of the corresponding parts of the machinery designated in this combination are not the same in point of form in the two bolting apparatuses, and, separately considered, could not be regarded as identical or conflicting, yet having the same purpose in the combination, and effecting that purpose in substantially the same manner, they are the equivalents of each other in that regard. The claim of the patent is not confined to any particular form of apparatus, but (in regard to the valves, for example), embraces generally any valves for feeding and delivering the meal without allowing the air to pass through."

Counsel for defendants refers to language employed by us in Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36, in stating the import of the decision of this court in the McSherry Case, where we said:

"Inasmuch as the springs and the clamp of the patent were made integral by rigidly fixing them together, we held that, recognizing the invention as a distinct advance in the art, the pivoting of the forward ends of the springs directly upon the drawbars was substantially the equivalent of uniting the ends of the springs with a clamp, and then pivoting the clamp upon the draw-bars"—

And supposes that by "the pivoting the forward ends of the springs directly upon the drawbars" we meant an immediate physical connection of the springs with the drawbars, and assumes from this that we had deemed such physical connection material. But this is a misconstruction. By "directly" we meant without the intervention of clamping plates. That was the feature involved, and not the question as to the point where the pivotal connection should be made.

Counsel for defendants claim further that there is a radical difference in the manner in which their spring lever is connected at the rear end with the coupling rod through which the power is applied, in that the attachment is made in front of the hopper, instead of behind it, as in the Hoyt patent, and the spring rod does not extend behind the hopper. But the claims do not require that the connection of the lever with the coupling rod shall be behind the hopper, and the lever and the rod do undoubtedly conjointly perform the same service as in the Hoyt patent, and substantially in the same way. So far as the means for depressing the shoe are concerned, they are the same. In raising the shoe the same parts are employed, but the function of the lever is diminished and that of the connecting rod is correspondingly increased. Of course, the question of equivalency cannot arise if the mechanism and its mode of operation are precisely the same. We agree with the opinion of the Circuit Court of Appeals for the Eighth Circuit in the Fowler Case, supra, where the same question arose upon a like construction, and the difference was held not to be material. It seems a proper case to which might be

applied the observation of Judge Taft in King Axe Co. v. Hubbard, 97 Fed. 795, 803, 38 C. C. A. 423, where in similar circumstances he said:

"This is an instance, not infrequent in patent litigation, where the infringer has sought to evade the claims of a patent, the substance of which he is appropriating, by deliberately impairing the function of one element, without destroying the substantial identity of structure, operation, and result."

We must take notice of a line of argument upon which much stress is laid by counsel for defendants. It appears that the complainant in some of its advertising literature, for the purpose, as we must suppose, of catching trade, has set forth and claimed as an important advantage of its drill that the devices for depressing the lever and shoe were such that the force applied to the lever is exhausted in the structure itself, and does not extend to the frame of the drill; in other words, that this section of the drill will stand upright when detached from the drill and pressure is applied to the lever. And it was pointed out that this feature distinguished it from all other drills, and pictorial illustrations were given of the one standing upright under pressure when detached, and the others tumbling forward when manipulated in the same way. This matter is adopted in the brief for defendants as the statement of the complainant's understanding of the theater of the controversy and of the distinguishing characteristic of its patent. Thus the defendants easily disposed of the controversy by the confession of the complainant. But this supposed advantage is nowhere suggested in the patent; the specification does not point to so constructing the device as to accomplish it, nor would it be effected unless the proportions were so adjusted as to balance the parts under pressure. Perhaps this defense may be excused upon the ground that the complainant has in this suit advanced this feature as one to commend the patent to favorable consideration, and has produced expert mechanical testimony to prove that the feature does in fact exist. We think the whole matter is too trivial to require further attention.

Some minor points of difference exist between the structures of the parties, but they are all subordinate to the main features we have considered.

We are of opinion that the complainants' patent is valid, and is infringed by the defendants as charged. The decree is therefore reversed, and the cause remanded with directions to enter a decree for an injunction, and for the recovery of profits and damages to be ascertained.