NATHAN et al. v. HOWARD.

(Circuit Court of Appeals, Sixth Circuit. March 9, 1906.)

No. 1,499.

1. PATENTS—INFRINGEMENT—GAS BURNING STOVES.

The Howard patent, No. 626,997, for improvements in heating stoves designed to secure the more perfect combustion of gases by means for introducing heated air above the fuel, was not anticipated and discloses invention; the construction shown being more effective to secure the result sought than any in the prior art. Also *held* infringed by a construction which is only colorably different from that of the patent.

2. SAME—COLORABLE ALTERATIONS.

Neither the joinder of two elements of a patented combination into one integral part, accomplishing the purpose of both and no more, nor the separation of one integral part into two, together doing precisely or substantially what was done by the single element, will evade a charge of infringement.

3. SAME.

The impairment of the function of a part of a patented structure, by omitting a portion, will not avoid infringement, nor will a mere change of form, when the principle of operation is preserved and appropriated.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

W. A. Owen and Melville Church, for appellants.

R. H. Parkinson and George M. Finckel (Almon Hall, on the brief), for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge.. This is a bill to restrain infringement and for an account of damage and profits. The patent involved is No. 626,997 issued to the appellee, James B. Howard, June 13, 1899, and is for certain improvements in heating stoves. The invention relates to that class of stoves wherein air more or less heated is discharged above the fuel in the fire pot for the purpose of aiding the combustion of the gases and smoke arising therefrom. The defenses are invalidity and noninfringement. The problem which the inventor proposed to deal with was the combustion of the gases arising from the burning coal before they shall escape up the pipe or chimney.

The patentee in his specifications refers to the fact that in the burning of soft coal a considerable per cent. of the "heating power is lost through the escape of carbonated hydrogen and other gases and minute particles of coal and smoke evolved in the burning process." He also refers to the common knowledge that "ordinary combustion consists of the chemical union of the oxygen of the air with the carbon and hydrogen of the fuel," and that "before this union can be initiated and continued the elements must be heated to a high specific degree, * * * and that if air be introduced and mingled with the gases rising from the fuel and be sufficiently heated the combustion of those gases can be effected before they escape into the pipe or chimney where their ignition will be impracticable." The introduction of jets of heated air into the combustion chamber of coal heating stoves, for the purpose indicated, he recognizes had been often attempted, but

claims that former efforts had not been successful, because "of a failure to insure a thorough heating of the oxygen of the air and its introduction at the proper point and in quantity sufficient to effect the ignition of the gases." He therefore says that the object of his invention "is to provide a construction of stove in which the air is heated to such a degree, and introduced and mingled with the gases as they rise from the fuel in such quantity, that the practically complete combustion of those gases as well as the smoke is insured."

The evidence shows that the construction of Howard accomplishes the result sought beyond all prior devices. Many prior patents have been pleaded for the purpose of showing anticipation. Some of them show that the problem was well understood, and means are shown which, in greater or less degree, are effective in consuming some of the escaping gases, but none of them seem to have come into general use, or to have accomplished the end sought with any such effectiveness as the means devised by Howard. That there is great similarity in the devices intended to secure the combustion of escaping gases must be also admitted. Thus the supplying of air more or less hot, by means of tubes or flues discharging the heated air through an iron ring, having perforations, placed on top of the fire pot, is common to more than one of the earlier inventions. One of the earliest is a patent issued in 1860 to J. Van Wormer, which is described as being "an improvement in the method of supplying atmospheric air to the incandescent gases and product of combustion after they have passed off from the fuel, in order to effect a more perfect combustion of them." The structures disclosed by this patent show that the fire pot is provided with a thick lining of fire clay and is surrounded by a sheathing formed by a portion of the body of the stove so as to create an air chamber which surrounds the fire pot. The air to be heated is conducted up through this air chamber by means of tubes, which are shown as free from contact with either of the walls of the chamber. This absence of contact between the air flues and the fire obviously prevents heating the air conveyed to the combustion chamber to that high degree necessary to accomplish the purpose of Howard's invention.

Mr. Knight, the expert introduced by the defendants, pointed out patent No. 101,001, to H. G. Giles, as showing a construction most nearly resembling that of Howard. But this shows that air is supplied to a perforated ring at the top of the fire pot by pipes outside of the fire pot leading up from an air chamber, below the fire pot, having an opening for admission of fresh air. The prime trouble with Van Wormer and with Giles, and with all the other devices relied upon as anticipating, lies in the failure to supply air heated to a sufficiently high degree and in quantity sufficient, at the right place, to effectively ignite and consume the escaping gases from the burning fuel before they pass up the pipe or chimney so as to be practically beyond control. Howard's device is differentiated from Giles' and all others by his method of constructing his air flues inside the air pot; one wall of the air pot constituting one side of his flue, the other being made by the introduction of an iron plate so shaped, when placed against the inside wall of the fire pot, as to constitute a wide but thin air flue, and the

air from the exterior being admitted at the bottom through an inlet provided with a valve.

Claim 1 of his patent reads as follows:

"In a stove, a fire pot, 1, bulging outwardly at its upper part and having a contracted top, a hollow ring, 9, located at the top of the fire pot and having openings, 9a, and a flue or flues, 3, for heating air communicating with hollow ring and bent inwardly and being narrow or contracted at its upper end, the wall of the fire pot forming one side of said flue, substantially as shown and for the purpose described."

The second claim is identical with the first, but in addition includes the means for admitting air into the flue or flues.

His structure is best understood by the drawings of the patent, which are here set out, together with his explanation of his invention:

"Figure 1 is a side view of a heating stove with parts broken out to illustrate the interior construction thereof. Fig. 2 is a horizontal sectional view on the line x x of Fig. 1, looking upward. Fig. 3 is a perspective view of a plate constituting part of the fire pot adjacent the air-heating flue. And Fig. 4 is a perspective view of the fire pot on a larger scale, the air-heating flues, and air-heating ring or chamber; a part of one of the air-heating flues being broken out, as shown in section. Like characters of reference in the

several views designate corresponding parts: 1 marks the fire pot, which is of cast iron and bulges outward at its upper part, but has a somewhat contracted top. The fire pot rests upon the base, 2, over the ash pit or chamber and has no communication therewith except through the grate opening. At one or more points (preferably at four equidistant points) on the fire pot are formed air-flues, 3. These flues are formed between plates, 4, constituting part of the fire pot and the outer shell, 5. In the lower part of the outer shell, 5, or nearly on a level with the lower end of the fire pot, is an opening, 5a, to which is attached a horizontally standing air inlet or duct, 6, provided with a door or valve, 7. The door or valve is preferably supported on a thumbscrew, 8, swiveled therein and threading into a bar, 6a, cast across the outer end of the duct, and in order that the door may be opened and closed in a right line it is furnished with splines or feathers, 7a, to enter grooves, 6b, in the sides of the duct, 6. Supported upon the top of the fire pot and extending entirely around the same is a hollow ring, 9, made with liberal openings, 9a, on its inner side. The outer side of this ring is closed by the sheet-steel combustion-chamber, 10, when set in place (See Fig. 1), and the under side communicates with the hot-air flues, 3, only, and all air passing into the flues must pass through the ring. The location of the ring at the contracted top of the fire pot insures the introduction of the highly-heated air directly in contact with the products of combustion immediately after leaving the bed of fire, thereby effecting a more certain and rapid union of the gases at the proper place in the stove. It will be observed that the outer sides of the flues, 3, are straight, while the inner sides of the plates, 4, forming part of the fire pot, incline inward toward their lower ends. Hence the flues are wide at the bottom and narrow and contracted at the top, so that all air in passing up through the flues comes into close contact with or proximity to the highly heated fire pot, thus insuring an intense heating of the air before it passes into the ring and fire pot."

That the field was narrow when he entered it must be conceded. Nevertheless, he seems to have fallen upon means for bringing about the combustion of gases and smoke, not identical with the earlier devices, and better adapted than any one of them to accomplish the end sought. We therefore agree with the trial judge in holding that his claims 1 and 2 are valid.

The question of infringement presents greater difficulties. The elements of Howard's first claim are: In a stove: (1) A fire pot, 1, bulging outwardly at its upper part and having a contracted top. (2) A hollow ring, 9, located at the top of the fire pot and having openings, 9a. (3) A flue or flues, 3, for heating air communicating with the hollow ring and bent inwardly and being narrow or contracted at its upper end; the wall of the fire pot forming one side of said flue. But defendants say that the fire pot of their stove neither bulges outwardly at its upper part, and does not have a contracted top. Therefore they say that this element, as described and claimed, is not present in their structure, and hence they do not infringe.

That defendants' fire pot increases in diameter from bottom to top is plain. The form of Howard's pot is not of the essence of the invention. Defendants have not in precise detail reproduced a fire pot bulging outwardly at its upper part, if by "bulging outwardly" is meant a "hump" or "rounded protuberance" which they say are meanings attached to "bulging," but another meaning is to "swell" or "bend outward." This gradual increase of diameter is a substantial following of Howard's form in that particular. To escape being contracted at the upper part, defendants have changed the line of divi-

sion between the hollow ring casting, which rests on top of the fire pot, and the fire pot proper. What they have done is most accurately put in the brief of counsel for appellee when it is said:

"Instead of dividing the casting forming the ring, or second element in Howard's claim, from the casting forming the rest of the fire pot near the inner edge of this contraction, as Howard does, the defendants have extended the casting forming the ring downward and outwards, making the junction between it and the casting below near the outward edge of this contracted part, instead of near the inner edge."

Neither the joinder of two elements into one integral part accomplishing the purpose of both and no more, nor the separation of one integral part into two, together doing precisely or substantially what was done by the single element, will evade a charge of infringement. Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 538, 36 C. C. A. 375; Dowagiac Mfg. Co. v. Brennen, 127 Fed. 150, 62 C. C. A. 257. This principle is even more applicable when the change made relates to mere matter of form not of the essence of the invention.

In Winans v. Denmead, 15 Howard, 330, 342, 14 L. Ed. 717, the claim was for a coal carrying car "in the form of a frustum of a cone." The defendant constructed like cars, except they were octagonal and pyramidal in form. He was held an infringer, the court saying that the invention did not consist in a change of form, and the form described and claimed was not of the substance of the invention. Of course, when the form claimed is inseparable from the substance of the invention, a different rule prevails. But, said the court in that case:

"When form and substance are inseparable, it is enough to look at the form only. Where they are separable, where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention—for that which entitled the inventor to his patent, and which the patent was designed to secure. Where that is found, there is an infringement, and it is not a defense that it is embodied in a form not described, and in terms claimed by the patentee."

Again, defendants say that they have not used the ring of Howard. It is true that they do not extend their ring entirely around the top of the fire pot. A segment has been omitted. That which remains performs the function of the complete ring, perhaps not so well as if the ring had been completed. It is still, in substance and effect, the "ring" of Howard, and though a segment is omitted defendants themselves advertise it as a "ring." But the impairment of the function of this hollow ring by omitting a short segment will not escape infringement. King Axe Co. v. Hubbard, 97 Fed. 795, 38 C. C. A. 423. How near to a complete ring must the imitator go before he can be said to infringe? In Winans v. Denmead, 15 How. 330, 343, 14 L. Ed. 717, where the precise form of the car described as claimed had not been used by the infringer, the court, in answering a like question to that we have propounded, said:

"In our judgment, the only answer that can be given to these questions is that it must be so near to a true circle as substantially to embody the patentee's mode of operation and thereby attain the same kind of result as was reached by his invention. It is not necessary that the defendant's cars should employ the plaintiff's invention to as good advantage as he employed it, or

that the result should be precisely the same in degree. It must be the same in kind, and effected by the employment of his mode of operation in substance."

· It is next said that the hot air flue in defendants "is not bent inwardly at its upper end," nor is it "narrow or contracted at its upper end." The claim does not call for a flue "bent inwardly" at its upper end. This limitation is not justified. The words "at its upper end" in the contention of the appellees are not implied and are not a proper limitation upon the description of the flue as "inwardly bent." The specifications describe the hot air flues as inclining inwardly "toward their lower ends." The claims in referring to flues bent inwardly is tracing them from the hollow ring down. The defendants' flue has the same inward bend. There is nothing in the claim which requires that Howard's hot air flue shall be wider at the bottom than at its top. The object is to have a thin stream of hot air at the top. This the defendant has. The inward bend of his plate 4, being a plate substantially like plate 3 of the patent, gives the same heating effect by contact of the air passing up against its lining surface as in the Howard patent, and there is the same narrow or contracted top called for by the patent.

The proceedings in the patent office, as shown by the file wrapper and contents, do not operate to impose any greater limitations than are indicated by the limitations imposed by Howard's claims. These do operate to confine him to a structure substantially of the form and shape there described. But the defendant's stove is substantially the same in form. The departures we have considered are merely colorable evasions. We see no such difference as to enable appellants to escape infringement.

Decree affirmed. Remand for an account of damages and profits.