DOWAGIAC MFG. CO. v. MINNESOTA MOLINE PLOW CO. et al.†

SAME v. SMITH et al.

(Circuit Court of Appeals, Eighth Circuit. October 24, 1910.)

Nos. 3,041, 3,042.

1. PATENTS (§ 312*)—INFRINGEMENT OF IMPROVEMENT PATENT—PROFITS RECOVERABLE.

The Hoyt patent, No. 446,230, for a grain drill, is for a combination of old elements with a single novel element added for the purpose of giving an independent spring pressure to each of the shoes of the drill, and, in order to entitle the owner to recover profits from an infringer, it is indispensably necessary that the proofs should enable the court to apportion the profits between the novel and only patentable feature and the remainder of the structure.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 312.*

Accounting by infringer for profits, see note to Brickill v. City of New York, 50 C. C. A. 8.]

2. PATENTS (§ 325*)—SUITS FOR INFRINGEMENT—COSTS OF ACCOUNTING.

Where, on an accounting in an infringement suit, complainant is awarded only nominal damages, it may properly be taxed with all the costs of the accounting, including the hearing on exceptions to the master's report.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 607–612; Dec. Dig. § 325.*]

Appeal from the Circuit Court of the United States for the District of Minnesota.

Suits in equity by the Dowagiac Manufacturing Company against the Minnesota Moline Plow Company and Thomas H. Martin, and by the same complainant against Ernest F. Smith and Luppo Zimmer. Decrees awarding complainant nominal damages only in each case, and it appeals. Affirmed.

See, also, 118 Fed. 136, 55 C. C. A. 86.

Fred L. Chappell, for appellant.

Thomas A. Banning (Banning & Banning, on the brief), for appellee Minnesota Moline Plow Co.

Julius S. Starr, for appellees Ernest F. Smith and Luppo Zimmer.

Before HOOK and ADAMS, Circuit Judges, and McPHERSON, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied December 8, 1910.

ADAMS, Circuit Judge. These were suits in equity to enjoin the infringement of United States patent No. 446,230, granted to Will F. Hoyt, February 10, 1891, and for an accounting of damages and profits. The Circuit Court sustained the patent, awarded an injunction against infringement, and referred the causes to a master to take the account. He reported for nominal damages only. The Circuit Court confirmed the report and entered final decrees accordingly. Complainant appeals.

The only question is whether the proof warranted a finding for substantial damages. The invention was for an improvement in grain drills of a well-known pre-existing type, the "shoe drill." Its object, as stated in the specification of the patent, was "to provide an independent spring-pressure for each of the shoes and covering-wheels of the drill, whereby the work of the drill is rendered efficient in uneven ground, and to provide means whereby said shoes and covering-wheels may be raised from the ground when the implement is not in use or when transporting it from one field to another."

The patent assumes the existence of practically all the elements of well-known grain drills then in existence except the means for exerting an effective pressure upon the shoes in order to elevate or depress them as occasion required. The claims provide for a certain spring metal pressure rod to accomplish this purpose. The interposition of this rod, in combination with old elements, constituted the invention of the patent.

The principle and scope of the invention have been the subject of considerable judicial inquiry, and the results may be briefly stated: In McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 721, 41 C. C. A. 627, 632, it was said:

"Grain drills were old. Shoes and press-wheels are elements found in other structures. * * * That Hoyt's drill is a marked improvement over older structures is most clear. * * * Hoyt was not a pioneer. But this invention is clearly a meritorious one. * * *"

In Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 55 C. C. A. 86, 89, 118 Fed. 136, 139, this court had the Hoyt patent under consideration and said of it:

"The function of the device in the Hoyt patent was to control the depth of the cut of the shoe by a regular pressure easily exerted by means of a lever, and by the same means to regulate the shoe in uneven ground, and to raise the shoe from the ground when not in use. The principle of the combination was old. The result attained old. * * * Hoyt, it is true, was not a pioneer."

It was there said by Judge Thayer, in a dissenting opinion not differing in this respect from the majority, as follows:

"Hoyt's patent, confessedly, does not cover a pioneer invention, but merely a new combination of old elements to accomplish a result which had previously been accomplished. * * * When the Hoyt patent was issued, what are termed 'shoe drills' were in common use, and various means had been employed by the manufacturers of such drills for applying pressure to the shoes, and for elevating them when the operator desired to do so."

See, also, Dowagiac Mfg. Co. v. Fowler, 58 C. C. A. 643, 121 Fed. 988.

In Dowagiac Mfg. Co. v. Brennan & Co., 62 C. C. A. 257, 259, 127 Fed. 143, 145, the Circuit Court of Appeals for the Sixth Circuit, in considering this patent, said:

"The objects which the inventor had in view were twofold: First, to provide means for depressing the shoes of the drill to meet the requirements of its movements when in operation upon differing and uneven surfaces; and, second, to provide means for lifting the shoe and its attachments off the ground while the drill is being moved from place to place. There were in use devices for both these purposes, but they lacked the desired simplicity, convenience, and ease of management. * * * Some, perhaps all, of these advantages had, in a way, been supplied by the former art; but they had not, so far as we can see, been so completely gathered together or attained in so simple and useful a way."

In view of these decisions, it is unnecessary to enter upon any independent discussion of the scope of the patent. While its claims call for all the elements of a then well-known grain drill, namely, transporting wheels, frame, hopper, shoe, draft-rods, clamping-plates, etc., the spring metal pressure rod used in combination with those elements constitutes the pith of the invention. It rests in the improvement of a specific part of a well-known structure.

Its character and scope have been thus briefly adverted to because they are important in determining the true measure of recovery for its infringement. The general rule in patent cases, like all others, is that a complainant is entitled to recover damages for the loss he has sustained by reason of the wrongful acts of the infringer, and the burden is on him to show how much it is. This was laid down by Mr. Justice Field, speaking for the Supreme Court, in the case of Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371. He said:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated."

And quoting from Mr. Justice Blatchford, who was the trial judge in the case, he added:

"The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative."

Authorities to the foregoing general effect are numerous, and their citation would be useless.

Complainant offered proof tending to show the profits made by defendants in sales of the entire structure without making any apportionment of them to the patented feature, as distinguished from the balance of the drill. It claimed the doctrine of apportionment to have no application, first, because, although the patent contains but one novel element, the combination of that element with the others constitutes an appropriation of all of them in combination. In other words, the contention is that, because the Hoyt patent is a combination patent in which one novel feature is combined with several not novel, each and all of the elements, associated in that combination, are, for

the purposes of an accounting, to be considered as appropriated by the patentee, and, if there is an infringement of the novel feature, all the profits made by the infringer upon the whole combined structure are recoverable, and that proof of those made by reason of the novel feature alone is unnecessary.  Reliance for this contention is placed upon the cases of McSherry Mfg. Co. v. Dowagiac Mfg. Co., 89 C. C. A. 26, 160 Fed. 948, and Brennan & Co. v. Dowagiac Mfg. Co., 89 C. C. A. 392, 162 Fed. 472.

Without now analyzing these cases, it serves our present purpose to say that if they support the contention of the complainant they seem out of harmony with the doctrine of the Supreme Court and our court as disclosed in many cases and particularly the following: Garretson v. Clark, supra; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; McCreary v. Pennsylvania Canal Co., 141 U. S. 459, 12 Sup. Ct. 40, 35 L. Ed. 817; Crosby Valve Co. v. Supply Valve Co., 141 U. S. 441, 453, 12 Sup. Ct. 49, 35 L. Ed. 809; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Keystone Mfg. Co. v. Adams, 151 U. S. 139, 147, 14 Sup. Ct. 295, 38 L. Ed. 103; Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 173 Fed. 361, 97 C. C. A. 621.

These cases have recently been considered by us in an opinion written by Van Devanter, Circuit Judge, in the case of Brown v. Lanyon Zinc Co., 179 Fed. 309, 102 C. C. A. 497, where a conclusion was reached adverse to complainant's present contention.

These authorities make it clear, we think, that an apportionment of profits between the patented and unpatented parts of the drill was indispensably necessary.  The invention did not inhere in the entire machine as an entity, but was only an improvement in a single element of an otherwise well-known device.

It is next contended that the entire value of the machine as a marketable article was properly and legally attributable to the particular patented feature, that it was derived from the Hoyt invention exclusively, and, therefore, within the rule laid down in the cases already cited and Westinghouse v. New York Air Brake Co., 72 C. C. A. 61, 140 Fed. 545, it was entitled to recover all the profits which the defendant made by the sale of the grain drills embodying the novel feature.

This depends upon the facts of the case, and they upon the evidence of the witnesses.  The master who took the evidence heard the witnesses, observed their demeanor, and formed his conclusion as a result of all those considerations which appropriately affect the mind of a trier of facts.  His conclusion was reviewed on exceptions by the learned trial judge.  Both of them found against the contention. There being no obvious error of law or serious mistake of fact, their findings will be accepted as true.  Moline Plow Co. v. Carson, 18 C. C. A. 606, 72 Fed. 387; Brown v. Lanyon Zinc Co., supra.  In this case not only is their conclusion presumptively correct, but a careful examination of the proof convinces us that it is actually so.

Complainant next argues that its grain drill was so peculiarly adapted for use in what was known as the Northwest Territory that it had superseded all other grain drills in that territory and could and

would have been supplied with reasonable promptness by the complainant if the defendants had not entered the field, and for that reason, within the rule laid down in Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987, it was entitled to recover as damages all it would have made by selling its machine to all the persons who purchased from the defendants in that territory. This contention also depended upon the proof. The master and the court below found against complainant on it, and there is not only ample evidence to support their finding, but, in our opinion, gathered from a careful review of the proof, they could not well have found otherwise.

One question remains for consideration. The costs of the accounting were large, and, in view of the fact that complainant recovered only nominal damages, the trial court ordered it to pay all costs attending the accounting, including the hearing on the exceptions to the master's report. We think this was right. Common practice in such cases seems to be to award the costs of the accounting against a complainant who without legal cause necessitated them. Kirby v. Armstrong (C. C.) 5 Fed. 801; Ingersoll v. Musgrove, 14 Blatchf. 541, Fed. Cas. No. 7,040; Robbins v. Illinois Watch Co. (C. C.) 78 Fed. 124; Kansas City Hay Press Co. v. Devol (C. C.) 127 Fed. 363.

While it is a rule of general application that the award of costs in equity rests in the sound discretion of the chancellor and is made according to the facts and circumstances of each particular case, we think the practice referred to should be a general guide.

The decrees as rendered must be affirmed.

NOTE.—The following is the opinion of Amidon, District Judge, in the court below:

AMIDON, District Judge (orally). These suits in their previous stages have established the validity of the complainant's patent, and have established that the defendants have infringed that patent. The causes were referred to masters for an ascertainment of the extent of the complainant's damages by reason of such infringement.

The rule in a patent cause is not different from what it is in any other cause in this particular, that the burden of proving the extent of his damages is upon the plaintiff. He comes forward with the charge, not only that the patent has been infringed, but that he has been damaged; and it is incumbent upon him to prove the character and the extent of the damage in order to justify the court in entering a judgment in his favor.

In the presentation of his cause before the masters the complainant sought to recover both the profits which he claims the defendants secured by reason of their unlawful sale of his invention and also the damage which he claims that he suffered by reason of such sales.

In order to pass upon the question of damages in these cases, it is of the first importance that the court ascertain the extent of the complainant's invention—not the extent of his manufacture, but the extent of his invention. The wrong that has been done him is a violation of the patent securing to him the invention.

Now in his claims and specifications he sets forth his invention in this language:

"This invention relates to new and useful improvements in grain drills commonly known as 'shoe drills'; and it consists in a certain construction and arrangement of parts, as hereinafter more fully set forth, the essential features of which being pointed out particularly in the claims.

"The object of the invention is to provide an independent spring pressure for each of the shoes and covering wheels of the drill, whereby the work of

the drills is rendered efficient in uneven ground, and to provide means whereby said shoes and covering wheels may be raised from the ground when the implement is not in use or when transporting it from one field to another."

The essential feature, therefore, of his invention, is not a press drill, but it is this spring pressure device for pressing the shoes into the ground. This is his invention, and it is the invasion of that that constitutes the defendants' wrongdoing.

The complainant, having made that invention and secured a patent for it, proceeded to manufacture the entire structure in which it is embodied, making a grain drill, consisting of tongue, frame, seed box, and wheels, and all the other elements of a large and complicated machine. His profits accrued from the manufacture of that machine and its sale, not from the manufacture and sale of his invention.

The defendants, in their infringement of the patent, sold structures that consisted of entire grain drills. Their profits were derived from the entire structure, and not from the subordinate improvement of the complainant's invention. And now the complainant comes forward and says: "It cost you to manufacture this grain drill, the entire structure, $20, and you sold it at $40"—I am not attempting to give the exact figures, but only something by way of illustration—"therefore there was a profit upon each grain drill that you sold, embodying my invention, of $20; therefore I am entitled to recover of you for every grain drill that you sold the sum of $20." That is not only unreasonable, when brought to the standard of common sense, but it is in violation of the well-established principles of law. Where an invention consists simply in an improvement of an established structure or machine, and there is an infringement of the patent, the patentee, when he seeks to recover damages, is bound to apportion the profits according to the extent of his improvement, when estimated in the light of the entire structure. He is bound to bring forth evidence himself upon that subject that will make plain, reasonably plain, the extent of his damages by reason of the infringement of his patent. The complainant here has not attempted to do that. There is nothing in the record from which any finding could be made. On the contrary, the complainant says: "My invention is a combination invention, and I have specified in my claims all the elements of a grain drill, and therefore my structure is an entirety, and whoever sells a structure embodying my invention is accountable to me for the entire structure which he sells." I think the complainant has proceeded upon an unjustifiable ground.

Then, upon the other branch of the case, the complainant says: "If the defendants had not sold their infringing machines, I should have sold as many more of my machines as they sold of the infringing machines." But the evidence shows that this was not an open field, in which the complainant's machine and the defendants' machines were the only competitors. The evidence shows clearly that there were a large number of other grain drills on the market, and that at an early stage of the period of infringement there entered the field a new device, known as the 'disc grain drills,' and that that form of structure has proven so much more efficient than the shoe drills that it had well-nigh driven the shoe drills out of the market by the close of the year 1902.

The only evidence there is that, if the infringing structures had not been sold, the complainant's structure would have been sold in a number equal to the infringing structures, is that those infringing structures embodied the complainant's grain drill, although they were sold under another name. But the evidence satisfies me, as it satisfied the masters, that there were many other considerations that were important and sometimes controlling considerations in the determination of what grain drill a purchaser would buy. It does not follow by any means that a farmer who bought a McSherry drill, if he had not gotten it, would not have purchased a Monitor, or a Van Brunt, or some of the other numerous grain drills that were on the market, and surely during the greater part of the period of the infringement it does not follow that if the purchaser had not obtained the McSherry drill, for example, he would not have purchased the disc, as the considerations which lead and control a purchaser are the way the subject is presented to him, the fact that he has had other dealings with the jobber, often the fact of credit, and

a hundred and one of those minor considerations which we all know are very efficient in determining, with the ordinary purchaser, where and what he will buy, and that the simple structure is not the only element to be taken into consideration.

The authorities are plain that a presumption of fact does not arise from the mere fact that infringing devices have been sold, that if they had not been sold the patented structure would have been sold, and yet that is the only evidence that is before me on the subject.

Considerable has been said in the argument to the effect that these defendants are "wanton" infringers of the complainant's patent. I do not think the evidence justifies any such finding. The fact that these defendants saw fit to contest the suit for infringement, acting upon the belief that their structure in fact did not infringe, does not make them out wanton and willful infringers of the complainant's rights. The cases in which that term has been most frequently applied are those in which a party, having a license for the sale of a patented article, has proceeded to sell the patented article after the cancellation of his license—some such situation as that.

We all know that whether a given structure is an infringement of a patent is a matter depending upon many nice considerations of fact, and many difficult questions of law, and that they are matters as to which laymen and lawyers and even courts entertain divergent opinions. In some features of the great body of litigation that has grown up on this patent for the Dowagiac drill, it has appeared that some considerable divergency of judicial opinion has arisen as to what constituted an infringement of the patent. Now, it would be a serious and unjustifiable charge to say that every defendant who saw fit to litigate his rights in court under such circumstances was a wanton and willful infringer of the complainant's invention.

In the case before Judge Clark, it seems that the evidence there was such as to lead him to believe that the defendants in that particular case were guilty of wanton and willful infringement. The evidence in that case is not before me, but sufficient excerpts from it have been presented here to show that the conduct of the defendants in that litigation was wholly different from the conduct of the defendants here. There the defendants were guilty of evasion and misrepresentation, setting up from time to time wholly different and inconsistent theories, and saying that statements which they had produced as to their business were given under a misapprehension at one time, and starting in upon an entirely different basis at another time, and of course a defendant who acts in that way does give a just ground for the inference that his conduct is willfully wrong.

Here the defendants have come forward with perfect frankness, have given a full and complete disclosure, and have met every requirement of open, frank, and honest dealing that the litigation could require of them.

A presumption exists that the findings and decision of a master in such cases as these are correct. The burden is upon the party excepting to point out and satisfy the court that the masters have erred. I have not been satisfied by the arguments presented to me, that the masters were guilty of any error in either of these cases. I have examined with considerable care Mr. Hitchcock's very full and complete review, both of the facts and of the law in this case, and have been greatly aided by the same. I believe he has presented the case fairly and justly, and that his conclusions are amply supported by the facts and the law.

The exceptions to the reports of the masters will be overruled, and a judgment entered in each of the cases in accordance with their reports.