## WESTERN ELECTRIC CO., Inc., v. KERSTEN RADIO EQUIPMENT, Inc.
### (two cases).
### Nos. 2273, 2302.

District Court, W. D. Michigan, S. D.
Oct. 18, 1930.

Richey & Watts, of Cleveland, Ohio (F. T. Woodward, of New York City, and H. A. Pattison, of counsel), for plaintiff.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for defendant.

RAYMOND, District Judge.

Because of substantial identity of issues, the above causes were consolidated for hearing. By agreement of counsel, the issues relative to Jones patent, 1,717,158, were eliminated. This leaves for determination questions relating to the validity and infringement of Wente patent, issued April 2, 1929, No. 1,707,545, for acoustic device, and of Harrison patent, issued November 5, 1929, No. 1,734,624, for piston diaphragm having tangential corrugations. There is also involved the question of unfair competition growing out of the alleged manufacture and sale by defendant of loud speakers similar in form and design to those marketed by plaintiff. Both patents in suit relate to loud speakers and the art of sound reproduction by means of a vibrating diaphragm.

Considering first the Wente patent, the claims relied upon by plaintiff alleged to be infringed are 1 to 5, inclusive, and claim 8. The objects of the invention and the preferred embodiment thereof are stated in the patent as follows:

"This invention relates to acoustic devices such as are used for receiving and transmitting sound.

"An object of the invention is to receive or transmit sound with high and substantially uniform efficiency over a wide frequency range.

"A specific object is to improve the transmission characteristics of loud speaking receivers at the upper portion of the sound frequency range.

"In accordance with a preferred embodiment of the invention, a piston diaphragm is provided to radiate into a sound chamber having a plug secured therein which decreases the area of a portion of the sound passage therethrough. The diaphragm and plug are so shaped and arranged that converging sound passages are formed thereby extending from the center of the diaphragm and from its peripheral portion to a common sound passage. The cross sectional areas of the converging sound passages preferably increase as the common sound passage is approached and these areas are such, moreover, that the air displaced by the diaphragm flows from each of the converging sound passages

into the common sound passage with substantially the same velocity. The meeting point of the converging sound passages is effectually the throat of the horn since the volume of the sound passage beyond this point is not appreciably affected by the displacement of the diaphragm."

Claim 8 of the patent is fairly illustrative of the other claims relied on by plaintiff, and is as follows:

"8. An acoustic device comprising a diaphragm having a dish-shaped portion and a flexible portion, means attached to said dish-shaped portion for driving said diaphragm, and means juxtaposed to one face of said diaphragm for directing sound waves from the center of the diaphragm outwardly and from the outer edge of said diaphragm inwardly to an annular passage, the face of said means conforming substantially. to the face of the diaphragm juxtaposed thereto."

Plaintiff claims that not until the Wente invention were talking pictures possible, and that this was due to the fact that his was the first loud speaker which transformed electric waves into reproduced sound waves with sufficient loudness, directness, and. fidelity over a wide range of frequencies to make such reproduction practical and entertaining. It also asserts that this result was long sought, and was obtained only after many years of painstaking experimentation and effort at large expense by eminent engineers and scientists. Defendant claims that the Wente patent is anticipated by a large number of prior patents, those most strongly relied upon being Hensley, No. 1,379,407, and Hunter, No. 875,352; and that, in view of these and other disclosures, the Wente patent is merely a selection of readily adaptable parts, all of which appear in the prior art. Consideration of the prior art indicates that the use of a diaphragm, electric means for vibrating the diaphragm by means of a voice coil winding extending into the gap of an electromagnet and a sound chamber into which the sound waves caused by vibration of the diaphragm are transmitted, and through it to the horn or outlet leading from the sound chamber, were well known to the prior art. Reference to Pridham, No. 1,266,988, Pridham, No. 1,579,392, and Hanna, No. 1,691,243, disclose these or closely allied combinations. The invention of Wente, if invention exists, consisted in the securing of a plug or cone in the sound chamber to decrease the area of a portion of the sound passage; the shape and arrangement of this plug relative to the diaphragm and walls of the sound chamber

being such as to provide a substantially continuous sound passage around the plug converging to the outlet. The use of plugs in sound chambers is disclosed in a number of earlier patents. See Graff, No. 1,711,939. The use of a so-called cover plate or other obstruction through openings in which the sound passes to the horn is taught by Guritot, No. 1,523,262, and Round, No. 1,690,840.

It is the claim of the defendant that these prior patents disclose structures fully anticipatory of that of Wente, and that to recognize the validity of the Wente patent would be, in substance, to patent a result and not a novel structure.

In the application of sciences as abstruse as those of magnetism, electricity, and acoustics, it may be doubted if the principle of operation of any device is clearly understood even by those most familiar with its use. The object to be sought by the Wente patent was the reproduction of sound among the higher cycles of sound waves and the clear reproduction of overtones or harmonics. This was to be brought about by the form and position of the plug or cone located in the sound chamber and its arrangement relative to the diaphragm and the walls of the sound chamber. The Wente patent states:

"When employed in conjunction with a horn having no inherent losses, a loud speaker constructed in accordance with the above description. has an efficiency of approximately 30%, measured from the electrical energy input to the acoustic energy output, over a wide range of frequencies. Measurements made on a loud speaker of this type, from which the plug 23 has been removed from the sound chamber, and which employs a diaphragm about 2.75″ in diameter, show that the frequency response falls off at frequencies above about 3,000 cycles per second at such a rate that practically no radiation takes place at a frequency of about 6,300 cycles. By inserting the plug into the sound chamber the frequency response characteristic of the loud speaker is improved to such an extent that the point of low radiation is moved up to a frequency of about 14,000 cycles per second and the efficiency of the loud speaker is practically uniform up to a frequency above 5,000 cycles."

The record discloses the accomplishment of results not possible with any of the devices cited as prior art. None of them, with the exception of Pridham and Jensen, No. 1,448,-279, found commercial use. Comparative tests disclose that the Wente construction was the first to make possible the reproduction

of a range of frequencies including all of the important overtones which made practicable the use of a sound-reproducing device to synchronize with motion pictures. It is reasonably certain that, while the principle of operation cannot be thoroughly comprehended, the design of the converging sound passages, the stiffening of the air column through the relatively close association of the diaphragm with the walls of the contiguous chamber, and the shape and location of the so-called plug, contribute substantially to the result obtained. It appears that the reproduction of natural tones is possible only if the loud speaker used is capable of reproducing sound waves of a variety of frequencies ranging from about 60 cycles per second to 8,000 per second. Without this range of frequencies the reproduced tones are so unnatural as to have slight value as a feature of entertainment. It satisfactorily appears that the Wente device for the first time reproduced this range of frequencies with sufficient loudness, fidelity, and directness to make possible its use in the important and growing industry of entertainment by means of motion pictures. The record discloses that none of the cited prior art devices is capable of reproducing the necessary range of frequencies nor the overtones to give them other than extremely limited value in any commercial field. The one exception is the Magnavox of the Pridham and Jensen patent. Tests of the Magnavox receiver disclose that it has a sustained rate of vibration only over a limited range running from 700 to 2,000 cycles. It is capable of reproducing neither the unvoiced consonants nor the overtones, and is clearly unsuitable for the commercial uses in which the Wente device finds its greatest value. Similar tests with the device illustrated in the Hunter patent indicate that its possible range of reproduction is from 300 to 4,500 cycles, and that it reproduces neither the unvoiced consonants nor the overtones. The disclosure of the Hensley patent and the Hunter patents is very similar except for the size of the air cavity and the relative size of the plug in comparison to the diaphragm. It appears that none of the prior art devices, with the exception of Magnavox, has found any commercial use. The failure of the trade to accept these devices, together with their impracticability for the use to which the Wente disclosure is best adapted, point strongly to the conclusion that, in the shape and arrangement of vital elements, Wente exercised the inventive faculty which is entitled to recognition. The combination with a diaphragm having piston action of a prop-

erly shaped and located plug or cone to provide a stiffened air column and converging air passages, appeared to Wente to be the solution of the problem confronting him. None of the prior art patents embodies the principles of operation of the patent in suit. Hensley, who sought more perfect reproduction of sound waves, evidently failed to achieve the result essential to bring his device either recognition or use. It is the judgment of the court that the patent is valid and well within the principles announced in the cases of American Ball Bearing Co. v. Finch (C. C. A.) 239 F. 885; Wellman-Seaver-Morgan Co. v. Cramp (C. C. A.) 3 F.(2d) 531; Gordon v. Walcott (C. C. A.) 32 F.(2d) 55; and Goodbody v. Firestone (C. C. A.) 23 F.(2d) 625.

The Harrison patent relates to diaphragms of the piston or plunger type. The general object of this invention, as stated in the patent, is to provide a diaphragm which when used in acoustic devices will respond accurately to and reproduce truly and without rattle all frequencies within normal audible range. The specific embodiment of the invention is described as:

"A diaphragm stiffened over the greater portion of its area is provided at its periphery with a concentric flexing area produced by means of tangentially arranged corrugations extending substantially perpendicular to the radii drawn to the inner ends of the corrugations."

Claims 11 and 16 are alleged by plaintiff to have been infringed. Claim 16 is as follows:

"In an acoustical device, a diaphragm having an outer portion, a central portion, and an intermediate portion so shaped as to be more flexible than the central portion or the outer portion, means for supporting the diaphragm along the outer portion, and driving means connected with the central portion at points removed from the center thereof."

It is the claim of defendant that the tangential corrugations specifically around a central dished portion of the diaphragm and integral with the dished portion constitutes the entire invention, and that so limited there is no infringement. It is claimed that immediately upon notice of the issuance of the Harrison patent it instantly adopted a diaphragm having a dished central portion with concentric corrugations in the outward extending portions of the diaphragm around the central portion of exactly the same structure as is shown in British patent to Stroh, 3393. Consideration of the cited prior art

patents brings the conclusion that there is no anticipation of the Harrison patent. There is no proof that any of them has found commercial use or that they are capable of performing the functions of the Harrison device. Stroh discloses a piston diaphragm but with a centrally located attaching means which would apparently render it useless or inefficient in loud speakers. Claim 16 of the Harrison patent calls for driving means connected with the central portion at points removed from the center. The decree will therefore find validity as to each of the patent claims discussed herein.

Upon the subject of infringement, it appears that defendant has manufactured and marketed two types of loud speakers. The first was in all material respects a duplicate of plaintiff's loud speaker. Upon notice of infringement, it made certain mechanical changes, the most important of which was that a plug or equivalent covering plate was made integral with the casing front instead of being separate therefrom as in plaintiff's device. A central hole was made through the plug, and a reduction was made in the size of the peripheral openings between the plug and the casing. The diaphragm first used by defendant was changed only as to the direction of the corrugations. These were made circumferential instead of tangential. The record is conclusive that these changes resulted in no appreciable change either in mode of operation or results. The perforated cover plate of defendant is the mechanical equivalent of the plug and surrounding portions of the sound chamber found in plaintiff's device. The device as changed operates to reproduce the frequencies through substantially the same ranges and throughout these ranges the loudness of the two speakers is substantially the same. In the case of Nathan v. Howard, 143 F. 889, 893 (C. C. A. 6), it was said:

"Neither the joinder of two elements into one integral part accomplishing the purpose of both and no more, nor the separation of one integral part into two, together doing precisely or substantially what was done by the single element, will evade a charge of infringement. Bundy Mfg. Co. v. Detroit Time-Register Co., 94 F. 524, 538, 36 C. C. A. 375; Dowagiac Mfg. Co. v. Brennan, 127 F. 150, 62 C. C. A. 257. This principle is even more applicable when the change made relates to mere matter of form not of the essence of the invention."

Defendant, while discontinuing production of an exact copy of defendant's device, has simply modified the construction in immaterial details and has preserved substantial identity of operation. The same is true of the changes in the diaphragm. The circumferential corrugations now in use by defendant are, so far as can be learned from the record, the full mechanical equivalent of the tangential corrugations illustrated in the Harrison invention and used by plaintiff. The changes made do not avoid infringement of claim 16. See Goodbody v. Firestone (C. C. A.) 23 F.(2d) 625. Discussion of infringement of claim 11 and the validity and effect of the disclaimer filed is unnecessary.

It is the view of the court the charge of unfair competition cannot be sustained. Examination of the competing device leads to the conclusion that there is no such identity in appearance as would have a tendency to deceive those who purchase this type of merchandise. There is a substantial difference in color, form, and price. Identifying name plates practically eliminate any likelihood of confusion. See Estate Stove Co. v. Gray & Dudley Co. (C. C. A. 6, June 13, 1930) 41 F.(2d) 462, 463, wherein it was said:

"Considering the class of purchasers who would be the normal customers for such an article, it would not often be purchased merely from an advertisement or from a hasty glance at one on display, but it would naturally be somewhat carefully examined by the purchaser."

This language is appropriate to the facts of the instant case.

Findings of fact and conclusions of law may be presented in conformity with this opinion and United States Supreme Court Rule 70½, after which a decree may be submitted for signature with usual provisions for injunction and accounting applicable to both of defendant's structures, accounting to date from time of notice of infringement.